IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 86-397

_____

IN RE THE MATTER OF THE REVISIONS TO THE )
WATER RIGHT CLAIM EXAMINATION RULES )          ORDER
AND THE WATER COURT PRACTICE AND )
PROCEDURE RULES. )

_____

On December 30, 2004, the Honorable Bruce C. Loble, Chief Water Judge of the Montana Water Court, filed herein a Petition to Revise Water Right Claim Examination Rules (Petition). The Petition proposed universal revisions of the Water Right Claim Examination Rules adopted by this Court in 1991. The 1991 Water Right Claim Examination Rules apply to the water right claim examination duties of the Department of Natural Resources and Conservation (DNRC) and to the Water Court's water adjudication duties. The Petition proposed revisions both to the water right claim examination duties of DNRC and to the Water Court's practice and procedure rules.

We issued an order on January 19, 2005, directing that the bench and bar and any interested persons file written comments, suggestions, or criticisms to the Clerk of this Court regarding the Petition filed by the Water Court on or before April 30, 2005. We later extended the comment deadline to May 31, 2005, at the request of the Water Court, in an order dated May 11, 2005. Various entities, including DNRC, the Department of Fish, Wildlife and Parks (DFWP), and the Montana Stockgrowers Association (MSGA) filed comments on the Petition.

The Court considered the Petition at its public meeting conducted on August 31, 2005. The Court deferred adoption of the proposed rules until the Water Court and the interested parties could collaborate on further revisions. This collaboration resulted in the Water Court filing a First Amended Petition to Revise Water Right Claim Examination Rules (First Amended Petition). The First Amended Petition supersedes the original Petition filed by the Water Court.

The First Amended Petition focuses on revisions to rules currently used by DNRC in

conducting its examination of water right claims. We have attached the new Water Right Claim Examination Rules to this Order as Exhibit A. DNRC, DFWP, and MSGA submitted comments on the proposed Water Right Claim Examination Rules contained in the First Amended Petition. All parties supported the adoption of the proposed Water Right Claim Examination Rules 1 through 26 and Rules 28 through 46, including the title page and table of contents. DFWP objected to the requirement in proposed Rule 27 (h)(5), that the Water Court hold a hearing to determine the validity of every wildlife, recreation, and fish and wildlife claim, other than claims filed by the DFWP under the Murphy right statutes. MSGA filed a response to DFWP's objection.

The Water Court filed a Second Amended Petition to Revise Water Right Claim Examination Rules (Re: Water Court Practice and Procedure Rules) (Second Amended Petition) on May 30, 2006. The Second Amended Petition also supersedes the original Petition filed by the Water Court. The Second Amended Petition focuses on the practice and procedure rules used by the Water Court. The Second Amended Petition also recommends that the title of these practice and procedure rules be changed to Water Right Adjudication Rules. We have attached the new Water Right Adjudication Rules to this Order as Exhibit B. DNRC and DFWP also submitted comments on the proposed Water Right Claim Examination Rules contained in the Second Amended Petition. DFWP objected to proposed W.R.Adj.R. 9(b), Notice of Intent to Appear (NIA), on the grounds that it fails to reflect Water Court decisions on the scope of NIA participation.

The Court reviewed the comments submitted by the Water Court, DNRC, DFWP, and MSGA to the First Amended Petition and the Second Amended Petition. The Court also discussed the First Amended Petition and the Second Amended Petition at its public meetings conducted on August 31, 2005, and September 26, 2006. We express our sincere appreciation to the Water Court and to all of the interested parties for their participation, cooperation, and collaboration in seeking consensus in the revision of the proposed rules.

The Court first determines that DFWP correctly points out that the Montana Code contemplates when hearings are necessary. Section 85-2-248(8), MCA, requires the Water Court to hold an evidentiary hearing on any issue remark that remains unresolved by the

process set out in § 85-2-248(2)-(7), MCA. We agree with DFWP that many of the remarks on wildlife, recreation, and fish and wildlife claims likely would be resolved through the process set out in § 85-2-248(2)-(7), MCA. As a result, we adopt DFWP's amended Water Right Claim Examination Rule 27(h)(5), as reflected in the attached Exhibit A.

We next recognize DFWP's concern of a potential conflict between the Water Court's past decisions on the scope of NIA participation and the scope as allowed under proposed Rule 9(b), W.R.Adj.R. We conclude, however, that the better practice would be to resolve any conflicts arising between the Water Court's application of M. R. Civ. P. 24 and its application of Rule 9(b), W.R.Adj.R., when a case in controversy exists rather than issue what would amount to an advisory opinion.

The Court has determined that the proposed rules, including the revisions to the claim examination rules set forth in the First Amended Petition, and the revisions to the Water Court practice and procedure rules set forth in the Second Amended Petition, would benefit the Water Court and parties appearing before it, promote the prompt and accurate resolution of water right claims and disputes, and facilitate the completion of water rights adjudications in Montana. These determinations complete our review and approval of the proposed rules, with one exception.

The one exception involves the issue of the appearance of non-lawyers in the Water Court on behalf of parties. DFWP argued that non-lawyers have appeared in Water Court proceedings far beyond the parameters of *pro se* representation allowed in Montana district courts. DFWP asked this Court to clarify the Water Court's policies for non-lawyer appearances. The Water Court justifiably relied upon informal advice provided by the Chief Justice of the Supreme Court in 1993 regarding the acceptability of the Water Court's historical practice of allowing non-lawyer appearances in circumstances that exceeded the parameters of *pro se* representation allowed in Montana district courts. The time has come, however, to move the Water Court into compliance with Montana law regarding the unauthorized practice of law.

The Court agrees with DFWP that the Water Court needs to clarify its policies and rules regarding non-lawyer appearances. The Water Court will promulgate, in consultation

3

with DNRC, DFWP, and other interested parties, rules regarding non-lawyer appearances in Water Court. These proposed rules will apply prospectively only and will reflect the unique nature of practice in the Water Court. At the same time, however, these proposed rules must comport with the requirements of § 37-61-210, MCA, and the Rules of the Commission on the Unauthorized Practice of Law, adopted in 1991, and amended in 2000.

Therefore,

IT IS HEREBY ORDERED that the First Amended Petition to Revise the Water Right Claim Examination Rules is GRANTED, with the revised rules to take effect upon the date of this Order;

IT IS FURTHER ORDERED that the Second Amended Petition to revise the Water Rights Adjudication Rules is GRANTED, with the revised rules to take effect upon the date of this Order;

IT IS FURTHER ORDERED that the Water Court, in consultation with DNRC, DFWP, and other interested parties, shall file with this Court within 60 days, proposed rules on non-lawyer appearances in Water Court;

IT IS FURTHER ORDERED that the State Bar of Montana publish in the next available issue of The Montana Lawyer a copy of this Order. The notice shall indicate that copies of the revised Water Right Claim Examination Rules, attached as Exhibit A, and the revised Water Right Adjudication Rules, attached as Exhibit B, are available for review and copying on the State Bar of Montana and the Montana State Law Library websites, www.montanabar.org and courts.mt.gov/library The Clerks of the District Courts of the State of Montana and the Clerk of the Montana Water Court also shall post a copy of this Order for public review in these offices.

IT IS FURTHER ORDERED that the Clerk of this Court give notice of this Order by mail to Peggy Probasco, President of the State Bar of Montana; Chris Manos, Executive Director, State Bar of Montana; The Honorable C. Bruce Loble, Chief Water Judge, Montana Water Court; Tim D. Hall, Legal Counsel, Montana Department of Natural Resources and Conservation; G. Steven Brown, Attorney for the Montana Board of Natural Resources and Conservation; Mike Murphy, Executive Director of the Montana Water Resources

4

Association; Krista Lee Evans, Environmental Quality Council; Judy Meadows, Librarian, State Law Library, and Gregory J. Petesch, Code Commissioner. The Clerk of this Court also shall give notice by electronic mail to the Clerks of the District Courts of the State of Montana. The Clerks of the District Courts of the State of Montana shall, in turn, post a copy of this Order for public review in these offices, and shall provide a copy of this Order to the respective District Court Judges.

IT IS FURTHER ORDERED that the Montana Water Court shall mail a copy of this Order to the members of the Water Adjudication Advisory Committee.

DATED this 6th day of December 2006.

/S/ KARLA M. GRAY
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE

*Exhibit A*

# WATER RIGHT CLAIM EXAMINATION RULES
# AMENDED BY THE MONTANA SUPREME COURT

EFFECTIVE
DECEMBER 5, 2006

TABLE OF CONTENTS
FOR
THE WATER RIGHT CLAIM EXAMINATION RULES

Page

## I. Introductory Provisions
| | |
|---|---|
| 1. Scope of Rules | 1 |
| 2. Definitions | 2 |
| 3. Centralized Record System | 11 |
| 4. Standard Measurements of Water | 13 |
| 5. Summary Report | 14 |

## II. Irrigation Claims
| | |
|---|---|
| 6. Purpose | 17 |
| 7. Owner Name and Address | 18 |
| 8. Point of Diversion (POD) | 19 |
| 9. Means of Diversion | 22 |
| 10. Reservoirs | 23 |
| 11. Source | 25 |
| 12. Place of Use (POU) | 27 |
| 13. Priority Date | 30 |
| 14. Flow Rate | 35 |
| 15. Volume | 39 |
| 16. Period of Use | 42 |

## III. Domestic Claims
| | |
|---|---|
| 17. Reference to Irrigation Chapter | 45 |
| 18. Place of Use (POU) | 45 |
| 19. Flow Rate and Volume | 47 |
| 20. Period of Use | 51 |

## IV. Stockwater Claims

21. Reference to Irrigation Chapter     53
22. Point of Diversion (POD)     53
23. Place of Use (POU)     53
24. Flow Rate and Volume     55
25. Period of Use     59

## V. Other Uses Claims

26. Reference to Irrigation Chapter     60
27. Purpose     61
28. Place of Use (POU)     64
29. Flow Rate and Volume     65
30. Period of Use     71
31. Point of Diversion (POD) and Means of Diversion     73
    for Instream or Inlake Appropriations

## VI. General Provisions

32. Public Meetings     74
33. Clarification     75
34. Amendments to Claims     77
35. Implied Claims     79
36. Claims Filed After April 30, 1982     81
37. Termination of a Claim     83
38. Ownership Updates     84
39. Change in Appropriation Right     86
40. Supplemental Rights     88
41. Multiple Use of a Right     89
42. Irrigation Districts     90
43. Documenting the Department's Examination     91
44. Claimant Contact     92
45. Returned Mail     93
46. Post-Decree Revisions     95

**EXHIBITS**

A.  Example of Department's Summary Report with Water Right Abstract

B.  Definition of Claimant Contact Regarding Irrigated Acres

C.  Example Claim Amendment Form

D.  Example Claim Termination Form

WATER RIGHT CLAIM EXAMINATION RULES
AMENDED BY THE MONTANA SUPREME COURT

EFFECTIVE
DECEMBER 5, 2006

## I.  INTRODUCTORY PROVISIONS

### RULE 1.  SCOPE OF RULES

**Rule 1(a).  Purpose.**  As provided by § 85-2-101(4), MCA: "Pursuant to Article IX, Section 3(1) of the Montana Constitution, it is further the policy of the state and a purpose of this chapter to recognize and confirm all existing rights. . . for any useful or beneficial purpose."

**Rule 1(b).  Role of the department.**  These water right claim examination rules are applicable to the Department of Natural Resources and Conservation (department) and specify how water right claims are examined prior to decree issuance by the department during Montana's general water rights adjudication. Throughout the adjudication process, the department is an executive agency providing technical assistance and information to the water court subject to the direction of water judges, pursuant to § 85-2-243, MCA.  The department assists the water court by gathering, examining, and reporting data, facts, and issues pertaining to the claims of existing rights.  In examining claims, the department's role is limited to factual analysis and the identification of issues.  The water right claim examination rules describe how the

8

department gathers data and facts pertinent to the claims of existing water rights. The water court determines the necessity and scope of any preliminary department examination as set out in these rules, but in no way influences the results of the directed examination.

**Rule 1(c).  Title.**  These rules shall be known as the Water Right Claim Examination Rules and may be cited as Rule \_\_\_, W.R.C.E.R.

**RULE 2. DEFINITIONS**

**Rule 2(a).  Adjudication definitions.**  Unless the context requires otherwise, the following definitions apply in these rules.

(1)  "Abstract" means the computer printout of each claim of an existing water right showing the information submitted on the original or amended statement of claim, any changes authorized by these rules or by the water court, remarks noting any obvious factual or legal issues presented by the claim, and other remarks explaining the nature and extent of the claimed water right.

(2)  "Acreage" means the number of irrigated acres.

(3)  "Adjudication" means the judicial determination of water rights that existed prior to July 1, 1973, including the total or partial abandonment of existing water rights occurring at any time before the entry of the final decree.

(4)  "Amended Claim" means the contents of a submitted claim as altered or changed by the claimant as to any matter contained in the original claim and as allowed by the water court.

(5)  "Animal Unit" means a measurement of livestock numbers. For example, one cow and calf pair is one animal unit, three pigs are one animal unit, five sheep are one animal unit, and one horse is 1.5 animal units.

(6)  "Appropriate" means to divert, impound or withdraw a quantity of water for a beneficial use.

(7)  "Associated Rights" means more than one water right used

at a common point of diversion, place of use or place of storage.

(8) "Basin Code" means the respective number/letter combination used to identify each of the 85 basins in Montana (e.g. 43QJ) according to the Atlas of Water Resources of Montana prepared by the Montana water resources board.

(9) "Beneficial Use" means a use of water recognized as beneficial prior to July 1, 1973 and used for the benefit of the appropriator, other persons, or the public and may include but not be limited to irrigation, stock, domestic, fish and wildlife, industrial, mining, municipal, power generation, and recreational uses.

(10) "Centralized Record System" means the original, electronic, microfilm or scanned records of all claims of existing rights, permits, certificates, applications, ownership updates, and other documents filed with the department.

(11) "Change in Appropriation Right" means a change made in accordance with § 85-2-402, MCA.

(12) "Claim" or "Statement of Claim" means a sworn statement of claim for an existing water right, as defined in § 85-2-224, MCA, filed with the department upon order of the Montana supreme court.

(13) "Claimant" means any individual, association, partnership, corporation, state agency, political subdivision, Tribe, the United States or any agency of the United States, or any other entity, who has filed a statement of claim or is successor in interest to a statement of claim as identified in the centralized records system.

(14) "Claimant Contact" means communication between the department and a claimant or claimant's authorized representative regarding the claimed water right.

(15) "Clarification" means the process by which elements of a water right are made more complete, clear, concise and

interpretable without changing the intent of the claimed information.

(16)  "Climatic Area" means areas defined by differing climatic and geographic conditions containing similar crop consumptive use data as delineated by the United States Department of Agriculture Natural Resource Conservation Service.

(17)  "Decree Abstract" means the abstract that is part of a water court issued decree.  The decree abstract contains the original or amended claim information, changes authorized by these rules or the water court, and water court ordered data, changes and remarks.

(18)  "Decreed Right" means a claimed water right determined in a judicial decree prior to the commencement of this adjudication or after commencement of this adjudication as provided in § 85-2-216, MCA.

(19)  "Department" means the Montana Department of Natural Resources and Conservation.

(20)  "Enforceable priority date" means a priority date of June 30, 1973, or later, which is administratively assigned to late claims that are subordinate to valid, timely filed claims and certain permits in accordance with § 85-2-221(3)(f), MCA.

(21)  "Examination" means the process under these rules of examining, gathering information, and reporting data, facts, and issues pertaining to the claims of existing water rights.  Prior to the adoption of the Water Right Claim Examination Rules on July 15, 1987, this process was referred to as "verification".

(22)  "Exempt Water Right" means an existing water right for which a statement of claim did not have to be filed pursuant to § 85-2-222, MCA.

(23)  "Existing Water Right" means a right to the use of water that would be protected under the law as it existed prior to July 1,

1973.  The term includes federal non-Indian and Indian reserved water rights created under federal law and water rights created under state law.

(24)  "Field Investigation" means an on-site inspection, under § 85-2-243, MCA, of physical evidence and features relating to the individual elements of a claimed water right.

(25)  "Filed Appropriation Right" means a water right which has been filed and recorded in the office of the county clerk and recorder as provided by statute prior to July 1, 1973.

(26)  "Final Decree" means the final water court determination of existing water rights within a basin or subbasin, as described in § 85-2-234, MCA.

(27)  "Flow Rate" means the rate at which water has been diverted, impounded, or withdrawn from the source for beneficial use.

(28)  "Groundwater" means any water under the surface of the land including the water under the bed of any stream, lake, reservoir, or other body of surface water.  Section 89-2911, R.C.M. 1947 (1961 Groundwater Code).

(29)  "Guideline" means an estimate of reasonable use to be used as the benchmark for initiating further department review or claimant contact under these rules.  The estimate of reasonable water use is derived from technical data and recommendations of the department and adopted by the water court.

(30)  "Historical Irrigation" means irrigation that took place for the first time before July 1, 1973.

(31)  "Historical Right" means an existing water right claim.

(32)  "Household" means the dwelling, house, or other domestic facilities where a person, family or social unit lives.

(33)  "Implied Claim" means a claim authorized by the water court to be separated and individually identified when a statement of claim includes multiple rights.

(34)  "Interior Drainage" means an area in which water drains into a depression from which water only escapes by evapotranspiration or subsurface drainage.  The scale varies from a small kettle in a glaciated area to a large playa lake, such as the Great Salt Lake in Utah.

(35)  "Irrigation" means the application of water to the land to eliminate the moisture limitation to crop production.  (Soil Conservation Service, 1979.)

(36)  "Irrigation District" means a statutory district created pursuant to Title 85, Chapter 7, MCA.

(37)  "Lake" means a naturally occurring inland body of water.

(38)  "Late Claim" means a claim to an existing water right forfeited pursuant to the conclusive presumption of abandonment under § 85-2-226, MCA.

(39)  "Legal Land Description" means the description given to a parcel of land in terms of, but not limited to, quarter section, section, township, range, and county.

(40)  "Means of Diversion" means the structures, facilities, or methods used to appropriate water from the source of supply.  For instream or inlake appropriations, the means of diversion is "instream."

(41)  "Microfilm Record" means a photographic film record on a reduced scale of all paper documents related to a water right.

(42)  "Multiple Use" means the same appropriation used for more than one purpose by a single owner.

(43)  "Natural Overflow" means the water that results in the flooding of land adjoining a stream during high flow with no man-

made diversion involved.

(44)  "Natural Subirrigation" means a naturally occurring high water table condition that supplies water for crop use.

(45)  "Non-consumptive" means a beneficial use of water that does not cause a reduction in the source of supply.

(46)  "On-site visit" means a field investigation conducted at a claimant's invitation.

(47)  "Other Uses" means all uses of water for beneficial purposes other than stockwater, domestic, and irrigation uses.

(48)  "Owner" means any person, according to § 85-2-102, MCA, who has title or interest in water rights or properties.

(49) "Ownership Update" means the updating of the department's water right ownership records by the filing of an Ownership Update Form, Form #608, formerly known as a water right transfer certificate, pursuant to §§ 85-2-421 through 85-2-426, MCA.  The department's form does not transfer water rights or legally determine water right ownership.  It updates the department's centralized record system to reflect the ownership identified on the legal documents that actually transfer water rights.

(50)  "Period of Diversion" means the period in a calendar year when water is diverted, impounded or withdrawn from the source.

(51)  "Period of Use" means the period in a calendar year when water is used for a specified beneficial use.

(52)  "Place of Use" (POU) means the lands, facilities, or sites where water is beneficially used.

(53)  "Point of Diversion" (POD) means the location or locations where water is diverted from the source.  For instream or inlake appropriations, the point of diversion is the portion of the source in which the instream or inlake use occurs.

(54)  "Preliminary Decree" means the preliminary water court determination of existing water rights within a basin or subbasin as described in § 85-2-231, MCA, which precedes the final decree.

(55)   "Priority Date" means the allocation date associated with a beneficial use of water which determines ranking among water rights, usually expressed by day, month, and year.

(56)  "Regional Office" means a branch office established by the department to provide water right information and assistance to the public or public agencies.

(57)  "Remarks" means statements added to the decree abstract by the department or the water court to limit or define a water right, to explain unique aspects of the water right, and to identify potential factual and legal issues.  Remarks that limit, define, or explain unique aspects of a claim are "clarifying" or "information" remarks.  Remarks that identify potential factual and legal issues are "issue" remarks.

(58)  "Reserved Water Rights" means a right to use water that is expressly or impliedly reserved by treaty, an act of Congress, or an executive order.

(59)  "Reservoir" means a storage facility, created or augmented by manmade means that impounds and stores water for beneficial use.

(60)  "Scanned Record" means a digitally scanned record of paper documents related to a water right.

(61)  "Service List" means the list of persons notified of all future hearings or proceedings relevant to a specific claim or case. This list may include the claimants and their representatives, any objectors and their representatives, any persons filing a notice of intent to appear and their representatives, any counterobjectors and their representatives, any intervenors and their representatives, and other persons receiving courtesy notification.

(62) "Source" means the specific supply from which water is taken for a beneficial use.

(63) "Split Claim" means the division of one water right claim into two or more separate claims. When a claim is split, one portion of the claim maintains the original claim number and the other separated portions are assigned new claim numbers.

(64) "Spring" means a naturally occurring extrusion of groundwater upon the land surface.

(i) "Developed Spring" means a spring with some man-made development at or below the point of extrusion that brings additional flow to the surface which would not naturally be available for use and is classified as groundwater.

(ii) "Undeveloped Spring" means the flow from the spring is not increased by some development at its point of extrusion from the ground and is classified as surface water.

(65) "Subbasin" means a designated area that drains surface water to a common point within a basin.

(66) "Summary Report" means the department's report to the Montana water court consisting of individual abstracts, the claimed and clarified data and a summary of the department's examination findings for each claim within a basin or subbasin.

(67) "Supplemental Rights" means separate water rights for the same purpose, owned by the same claimant, and used on overlapping places of use.

(68) "Surface water" means water occurring at or on the surface of the ground, including but not limited to any river, stream, creek, ravine, coulee, undeveloped spring, lake and other source of water.

(69) "Temporary Preliminary Decree" means a water court

decree, prior to the issuance of the preliminary decree, as necessary for the orderly administration of existing water rights pursuant to § 85-2-231, MCA.

(70)  "Type of Historical Right" refers to the historical basis of an existing water right as a decreed right, filed appropriation right, reserved right or use right.

(71)  "Use Right" means a claimed existing water right perfected by appropriating and putting water to beneficial use without written notice, filing, or decree.

(72)  "Volume" means the amount of water which has been diverted, impounded, or withdrawn from the source over a period of time for beneficial use, usually measured in acre-feet per year.

(73)  "Water Court" means the water division of the state courts, presided over by water judges responsible for adjudicating existing water rights in Montana, as provided for in Title 3, Chapter 7, MCA.

(74)  "Water Judge" means a judge responsible for adjudicating existing water rights as provided for in Title 3, Chapter 7, Part 2, MCA.

(75)  "Water Master" means a person appointed by a water judge to assist in the adjudication of existing water rights as provided for in Title 3, Chapter 7, Part 3, MCA, and Rule 53 of the Montana Rules of Civil Procedure.

(76)  "Water Resources Survey" (WRS) means a survey of water resources and water rights in Montana on a county basis by the former state engineer's office or water resources board, predecessors of the department.

(77)  "Water Spreading" means surface flood irrigation involving the diversion of occasional (flood or runoff) surface water from natural, usually nonperennial, watercourses by means of dams, dikes, or ditches, or a combination of these.  It differs from

conventional irrigation because it is totally dependent on and regulated by the availability of water, not crop needs.

(78) "Well" means any artificial opening or excavation in the ground, however made, by which groundwater can be obtained or through which it flows under natural pressure or is artificially withdrawn. Section 89-2911, R.C.M. 1947(1961 Groundwater Code).

**Rule 2(b). Non-adjudication definitions.** For additional definitions concerning post June 30, 1973 terms, see § 85-2-102, MCA.

### RULE 3. CENTRALIZED RECORD SYSTEM

**Rule 3(a). Maintaining records.** The centralized record system for the adjudication is maintained by the department in three parts as follows:

(1) numbered files of the original claim forms and documentation submitted by the claimant along with related materials added by the water court or the department;

(2) a computer record system which is initially the claimed information as clarified by the department; and

(3) a microfilm or scanned record of each numbered claim file.

**Rule 3(b). Finding information.** All water right information as claimed can be found in the claim file or microfilm or scanned records maintained by the department. Additionally, the claim files and the microfilm or scanned records will be updated to document each stage of the adjudication process.

**Rule 3(c). Data.** The data in the computer record system, initially the clarified claimed information, is used as the adjudication process advances to prepare the department's summary report and, ultimately, to produce the final decrees.

**Rule 3(d). Changing water right claims.** The department will

not change the claimed elements of an existing water right in the computer record system except as follows:

(1) prior to issuance of a decree:

(i) to implement procedures as authorized in these rules;

(ii) to comply with § 85-2-103, MCA, § 85-2-402, MCA, and §§ 85-2-421 through 85-2-426, MCA;

(iii) to reflect a claimant's amendments to a claim according to Rule 34 W.R.C.E.R.;

(iv) to correct a department data entry error; or

(v) as specifically ordered or directed in writing by the water court.

(2) after issuance of a decree:

(i) as specifically ordered or directed in writing by the water court;

(ii) in compliance with § 85-2-402, MCA and §§ 85-2-421 through 85-2-426, MCA;

(iii) to change an owner address; or

(iv) to remove asterisks identifying changes to claimed elements.

**Rule 3(e). Public records.** All records pertaining to the centralized record system are public records and therefore open to inspection by any person as provided in § 2-6-102, MCA. Prior to final decree anything in the file is part of a work in progress and may be subject to change.

**Rule 3(f). Reproducing materials.** For parties requesting reproductions of department materials, fees will be charged and

collected at rates established by the department. Reproduced materials for which costs will be recovered include, but are not limited to, photocopies, copies from microfilm, copies of microfilm, and computer generated materials.

**Rule 3(g).  Fees for decrees.**  Any person may obtain a copy of a water court decree from the department for a fee covering the cost of the printed or electronic copy.  Indexes of decrees may be obtained for a fee covering the cost of the printed or electronic copy.

## RULE 4.  STANDARD MEASUREMENTS OF WATER

**Rule 4(a).  Converting measurements.**  The department will use the following conversions in determining equivalent flow rates and volumes:

(1) forty (40) statutory or miner's inches equals 1.0 cubic foot per second (cfs);

(2) one (1) miner's inch equals 11.22 gallons per minute (gpm);

(3) one (1) cubic foot per second (cfs) equals 448.8 gallons per minute (gpm); and

(4) one (1) acre-foot of water equals 325,851 gallons.

**Rule 4(b).  Units of water measurement.**  The decree abstract and the department's summary report to the water court shall identify units of water measurement in compliance with § 85-2-103, MCA, as follows:

(1) for flow rates:

(i) less than one (1) cfs will be in units of gallons per minute;

(ii) equal to or greater than one (1) cfs will be in units of gallons per minute or cubic feet per second, as claimed or based on the customary reference for the method of diversion;

(2) volumes will be in acre-feet or gallons.

### RULE 5.  SUMMARY REPORT

**Rule 5(a).  Summary report.**  The department will prepare a summary report for each claim in a basin or subbasin as directed by the water court, which will be submitted to the water court for its review and use in adjudicating existing rights.  An example is shown as Exhibit A.  The summary report of a claimed water right is an abstract which includes:

(1) the claimed or clarified data, unless otherwise directed by these rules, for the following elements:

(i) owner and address;

(ii) purpose;

(iii) source;

(iv) type of irrigation system;

(v) priority date;

(vi) type of historical right;

(vii) flow rate;

(viii) volume;

(ix) maximum acres;

(x) period of use;

(xi) point of diversion and means of diversion;

(xii) reservoir; and

(xiii) place of use.

(2) The department's data may supersede the claimed data. Changes to claimed information made during the department's examination will be denoted on the abstract.

(3) Other information necessary to describe a water right will be listed on each abstract, where appropriate:

(i) basin code;

(ii) water right identification number;

(iii) surface water or groundwater designation;

(iv) climatic area for irrigation;

(v) number of households; and

(vi) period of diversion.

(4) Remarks limiting supplemental rights and multiple uses of a right will be added according to Rules 40 and 41, W.R.C.E.R.

(5) Other data and remarks to identify unique aspects or features of the water right as required by these rules.

(6) Remarks concerning unresolved issues or questions about an element identified during the examination of a water right claim. When the department's examination substantiates or does not appear to contradict those elements as claimed, no additional facts, data, or issues will be reported.

**Rule 5(b). Examining materials.** The department's summary report will be sent to the water court. The examination materials,

including but not limited to, computations, data and facts, and correspondence are maintained in the claim file.

(1) The examination materials and summary report will be available for inspection and copying by all persons.

(2) A microfilm or scanned copy of the examination materials for a basin, when completed, will be located at the local water resources regional office and the department's central office in Helena.

(3) A printed, microfilmed or scanned copy of the summary report for a basin, when completed, will be located at the water court. The summary report at the water court must be returned to the department five years after the decree is issued. The department must maintain the summary report as a public document as required by law.

(4) Inquiries concerning the examination materials and summary report may be directed to the local water resources regional office, or the department's central office in Helena. Any legal issues raised shall be referred to the water court.

## II. IRRIGATION CLAIMS

### RULE 6. PURPOSE

**Rule 6(a). Identifying purpose.** Facts and information concerning the purpose of a water right will be identified using the information in the claim together with any other data gathered by the department.

**Rule 6(b). Examining purpose.** When the claimed purpose cannot be substantiated, the department will gather further facts and data pertaining to the specific claim. The claimant may be contacted pursuant to Rule 44, W.R.C.E.R. In addition, an on-site visit may be conducted pursuant to Rule 44, W.R.C.E.R. Discrepancies in the claimed purpose that may require claimant contact or an on-site visit include, but are not limited to:

(1) the purpose cannot be discerned from the information in the claim;

(2) the water use appears to be for a purpose other than that claimed;

(3) the claimed purpose cannot be substantiated; or

(4) several purposes are indicated in the claim as multiple uses of the right.  Fire protection will be considered an incidental use.

**Rule 6(c).  Multiple uses.**  All claims under one ownership will be reviewed to identify multiple uses of a right pursuant to Rule 41, W.R.C.E.R.

**Rule 6(d).  Changing purpose.**  The claimed purpose of a water right will not be changed during the department's examination unless:

(1) amended by the claimant; or

(2) clarified by the department to identify similar purposes consistently.

**Rule 6(e).  Summary report.**  In the summary report to the water court, the department shall provide on each abstract the following data and facts concerning the purpose of a right:

(1) the claimed or clarified purpose;

(2) identification of unique aspects or features of the purpose;

(3) for irrigation claims, the type of irrigation system;

(4) a notation of changes made during the department's examination; and

(5) remarks concerning unresolved issues or questions about the claimed purpose such as the following situations:

(i) the right apparently has not been used for the claimed purpose for 10 or more consecutive years;

(ii) the right apparently has not been perfected; or

(iii) the type of irrigation is natural overflow.

### RULE 7.  OWNER NAME AND ADDRESS

**Rule 7(a).  Examining owner name and address.**  The name and address on all water right claims by the same ownership will be made consistent and current as follows:

(1) the name and address given for all water right claims belonging to each claimant in a basin will be reviewed. Discrepancies will be identified by comparing the claimant's name and address with information on record with the department's centralized record system, telephone directories, other sources, and if necessary, claimant contact data; and

(2) ownership shall be updated in compliance with §§ 85-2-421 through 85-2-426, MCA pursuant to Rule 38, W.R.C.E.R.

**Rule 7(b).  Changing owner name and address.**  The department, as a result of its examination, may revise the claimant's name or address to make them consistent and current.

### RULE 8.  POINT OF DIVERSION (POD)

**Rule 8(a).  Identifying point of diversion.**  The claimed POD will be identified and described by the nearest reasonable and concise legal land description.

(1) The information in the claim, aerial photographs, topographic maps, Water Resources Survey information, county land ownership records, and other sources available to the department may be used to review the claimed POD.

(2) When the claimed POD cannot be substantiated, the department will gather further facts and data pertaining to the specific claim. The claimant may be contacted pursuant to Rule 44, W.R.C.E.R. In addition, an on-site visit may be requested pursuant to Rule 44, W.R.C.E.R.

(3) A diversion structure used for more than one claim will have a consistent legal land description specified on all respective claims.

**Rule 8(b). Reviewing basin codes.** Claims having diversions within a common drainage basin or subbasin will be identified with a common basin code. The basin code will be reviewed to confirm that the claim has been grouped in the correct basin.

(1) If the department finds that a claim was omitted from a basin where a decree has been issued, the water court shall be notified.

(2) If the department finds that a claim was omitted from a basin where a decree has not been issued, the department will change the basin code in the claim file and in the centralized record system.

**Rule 8(c). Identifying interbasin transfers.** When the POD is in one basin and the place of use, or a portion thereof, is in another basin, an interbasin transfer shall be identified for the basin of the POU as well as the basin of the POD.

**Rule 8(d). Changing point of diversion.** The claimed point of diversion of a water right will not be changed during the department's examination unless:

(1) amended by the claimant;

(2) clarified by the department to the nearest reasonable and concise legal land description; or

(3) revised to identify and describe a POD used by more than one claim consistently.

**Rule 8(e). Summary report.** In the summary report to the water court, the department shall provide on each abstract the following data and facts concerning the point of diversion:

(1) the basin code designated by the department;

(2) the claimed or clarified legal land description;

(3) additional legal land descriptions identified by the department such as government lots, subdivisions, certificates of survey, homestead entry surveys, and mineral surveys;

(4) identification of named ditches or canals;

(5) identification of unique aspects or features of the point of diversion;

(6) a notation of changes made during the department's examination;

(7) a remark identifying an interbasin transfer of water;

Examples:
THIS APPROPRIATION OF WATER TAKES WATER FROM THE _____ RIVER DRAINAGE (BASIN _____) AND USES IT IN THE _____ RIVER DRAINAGE (BASIN _____). ANY OBJECTION TO THIS RIGHT MAY BE FILED DURING THE OBJECTION PERIODS FOR EITHER THE POINT OF DIVERSION OR PLACE OF USE BASIN.

THIS APPROPRIATION OF WATER TAKES WATER FROM THE _____ RIVER DRAINAGE (BASIN _____) AND USES IT IN THE _____ RIVER DRAINAGE (BASIN _____) AND THE _____ RIVER DRAINAGE (BASIN _____). ANY OBJECTION TO THIS RIGHT MAY BE FILED DURING THE OBJECTION PERIODS FOR EITHER THE POINT OF DIVERSION OR PLACE OF USE BASIN.

and

(8)  remarks concerning unresolved issues or questions about the claimed point of diversion such as the point of diversion legal land description could not be refined.

### RULE 9.  MEANS OF DIVERSION

**Rule 9(a).  Identifying means of diversion.**  Facts and information concerning the means of diversion of a water right will be identified using the information in the claim, aerial photographs, topographic maps, Water Resources Survey information, and other sources available to the department.

**Rule 9(b).  Examining means of diversion.**  When the means of diversion cannot be substantiated, the department will gather further facts and data pertaining to the specific claim.  The claimant may be contacted pursuant to Rule 44, W.R.C.E.R.  In addition, an on-site visit may be requested pursuant to Rule 44, W.R.C.E.R.

**Rule 9(c).  Changing means of diversion.**  The claimed means of diversion of a water right will not be changed during the department's examination unless:

(1) amended by the claimant; or

(2) clarified by the department to identify similar means of diversion consistently.

**Rule 9(d).  Summary report.**  In the summary report to the water court, the department shall provide on each abstract the following data and facts concerning the means of diversion:

(1) the claimed or clarified means of diversion;

(2) identification of unique aspects or features of the means of diversion;

(3) a notation of changes made during the department's

examination; and

(4) remarks concerning unresolved issues or questions about the means of diversion, such as "the means of diversion cannot be identified."

**RULE 10.  RESERVOIRS**
**Rule 10(a).  Identifying reservoirs.**  When stored water is claimed, the legal land description of the impoundment structure, onstream and offstream designation, and the period of diversion will be identified. When available, the following reservoir data will be included:

(1) dam height;

(2) surface area;

(3) reservoir depth;

(4) maximum reservoir storage capacity; and

(5) reservoir name.

**Rule 10(b).  Reservoir data.**  The information in the claim along with other data gathered by the department will be used to check the reservoir designation.

(1) The legal land description will be identified to the nearest reasonable and concise legal land description.

(2) When a reservoir is claimed, the claimant will be contacted pursuant to Rule 44, W.R.C.E.R., to determine the period of diversion.

(3) When the claimed volume is greater than 15 acre-feet and less than 50 acre-feet, and data are not sufficient to identify the size of the reservoir, the claimant may be contacted pursuant to Rule 44, W.R.C.E.R., or the size of the reservoir may be estimated by the department.

(4) When the claimed volume is greater than 50 acre-feet, the claimant will be contacted pursuant to Rule 44, W.R.C.E.R. A questionnaire may be sent to the claimant.

In addition, an on-site visit may be conducted pursuant to Rule 44, W.R.C.E.R.  Information to be obtained may include:

(i) dam height;

(ii) surface area;

(iii) reservoir depth;

(iv) maximum reservoir storage capacity;

(v) date constructed;

(vi) period of diversion into storage;

(vii) period of use from storage;

(viii) volume of use per year;

(ix) carry-over storage; and

(x) number of fills per year.

**Rule 10(c). Flow rate guidelines.**  The flow rate guidelines for claims involving reservoirs are found in the respective flow rate rule of the irrigation, domestic, stock, and other uses chapters.

**Rule 10(d).  Volume guidelines.**  The volume guidelines for uses involving reservoirs are found in the respective volume rule of the irrigation, domestic, stock, and other uses chapters.

**Rule 10(e).  Summary report.**  In the summary report to the water court, the department shall provide on each abstract the following data and facts concerning reservoirs including:

(1) a notation of the reservoir as onstream or offstream;

(2) the legal land description of the impoundment structure;

(3) additional legal land descriptions identified by the department such as government lots, subdivisions, certificates of survey, homestead entry surveys, and mineral surveys;

(4) the period of diversion;

(5) the dam height, the surface area, reservoir depth, and reservoir name, when available;

(6) identification of unique aspects or features of the reservoir;

(7) a notation of changes made during the department examination; and

(8) remarks concerning unresolved issues or questions about the claimed reservoir such as the following situations:

(i) existence of the reservoir is unconfirmed; or

(ii) maximum claimed storage capacity differs from department estimates.

## RULE 11. SOURCE

**Rule 11(a). Identifying source name.** The source name will be identified using information in the claim along with other data gathered by the department. Source names for all claims on a particular source will be made consistent.

(1) The United States Geological Survey (USGS) topographic maps will serve to substantiate the claimed source name.

(2) If the source or source name cannot be substantiated

on the USGS maps, the department will review Water Resources Survey (WRS) maps, other published maps, or other available information to substantiate the claimed source name.  In addition the claimant may be contacted pursuant to Rule 44, W.R.C.E.R.

**Rule 11(b).  Identifying and reviewing multiple sources.** When more than one source is indicated in a claim, the multiple sources will be identified according to this rule. The claimant may be contacted pursuant to Rule 44, W.R.C.E.R.  When it appears that more than one water right is claimed, the claim will be sent to the water court requesting a review for possible implied claims pursuant to Rule 35, W.R.C.E.R.

**Rule 11(c).  Changing claimed source.**  The department, as a result of its examination, may revise the claimed source name using the following standard descriptions to identify the same sources consistently:

(1) streams, lakes, reservoirs, and named springs shall be standardized using, in order of preference, USGS topographic map, WRS map, or other published maps;

(2) the most common colloquial name will serve to identify the source when not in conflict with the USGS or WRS maps;

(3) unnamed springs flowing into a named hydrological feature shall be named "Spring Unnamed Tributary of _____";

(4) named wells and unnamed wells shall be named "Well";

(5) unnamed streams, lakes, and reservoirs flowing into a named hydrological feature shall be named "Unnamed Tributary of _____"; and

(6) other standard descriptions which accurately and consistently describe the source.

**Rule 11(d).  Summary report.**  In the summary report to the

water court, the department shall provide on each abstract the following data and facts concerning the source:

(1) the claimed source name or the standardized source name as identified by the department;

(2) identification of the source type (surface water or groundwater);

(3) identification of unique aspects or features of the source;

(4) a notation of changes made during the department's examination; and

(5) remarks concerning unresolved issues or questions about the claimed source.

**RULE 12.  PLACE OF USE (POU)**
**Rule 12(a).  Identifying place of use.**  The claimed POU will be identified and described by the nearest reasonable and concise legal land description and the associated irrigated acreage.

(1) The information in the claim, aerial photographs, topographic maps, Water Resources Survey information, county land ownership records, U. S. National Forest Service maps, Bureau of Land Management maps, as well as other sources available to the department may be used to review the claimed POU and associated claimed acreage.

(2) When the claimed legal land descriptions or claimed acreage cannot be substantiated, the claimant may be contacted pursuant to Rule 44, W.R.C.E.R.  In addition, an on-site visit may be conducted pursuant to Rule 44, W.R.C.E.R.  Discrepancies in the claimed place of use that may require claimant contact or an on-site visit include, but are not limited to:

(i) no legal land description is given for the claimed

place of use;

(ii) the claimed legal land description or claimed acreage is vague or incomplete; or

(iii) the claimed legal land description or claimed acreage is inconsistent with the source, point of diversion, or other documentation or data.

**Rule 12(b).  Examining place of use.**  The claimant's map and two or more post-priority date data sources, if available, will be used to examine the claimed irrigated acreage.

(1) If the acreage identified by the department on any data source differs significantly from the claimed acreage, additional information will be gathered.

(2) Acreage differences exceeding the amount defined in Exhibit B will require claimant contact pursuant to Rule 44, W.R.C.E.R.  If additional facts are needed, the department may conduct an on-site visit pursuant to Rule 44, W.R.C.E.R.

**Rule 12(c).  Overlapping place of use.**  When the department identifies a claimed POU of one party overlapping any portion of the claimed POU of another party, both parties will be contacted pursuant to Rule 44, W.R.C.E.R.  If the parties do not reach agreement among themselves resolving the overlapping POUs, the overlap shall be identified as an issue in the summary report to the water court.  This section may not apply when one or more of the parties is a ditch company or other water supply organization.

**Rule 12(d).  Changing place of use.**  The claimed place of use and acreage irrigated of a water right will not be changed during the department's examination unless:

(1) amended by the claimant; or

(2) clarified by the department to the nearest reasonable

and concise legal land description.

**Rule 12(e). Summary report.** In the summary report to the water court, the department shall provide on each abstract the following data and facts concerning the place of use:

(1) the claimed or clarified acreage;

(2) the claimed or clarified legal land description;

(3) additional legal land descriptions identified by the department such as government lots, subdivisions, certificates of survey, homestead entry surveys, and mineral surveys;

(4) identification of unique aspects or features of the place of use;

(5) a notation of changes made during the department's examination; and

(6) remarks concerning unresolved issues or questions about the claimed place of use such as the following situations:

(i) the acreage found on a data source differs from the acreage claimed by more than the amount specified in Exhibit B;

Example:
USDA AERIAL PHOTOGRAPH NO. 179-150, DATED 11-05-79, APPEARS TO INDICATE 50.00 ACRES IRRIGATED. A DESCRIPTION OF THESE ACRES IS IN THE CLAIM FILE.

or

(ii) overlapping places of use on claims by different owners.

Example:
THE WATER RIGHTS LISTED FOLLOWING THIS STATEMENT WERE FILED BY DIFFERENT PARTIES WHO CLAIM OVERLAPPING PLACES OF USE. 000000-00, 000000-00, 000000-00, 000000-00.

## RULE 13.  PRIORITY DATE

**Rule 13(a).  Identifying priority date.**  The claimed priority date and claimed type of historical right will be identified from the submitted documentation in the claim along with other data gathered by the department.

**Rule 13(b).  Type of historical right.**  The type of historical right (i.e., use right, filed appropriation right, decreed right, reserved right) will be identified based on the definitions in Rule 2, W.R.C.E.R.

(1) If the claimed type of historical right differs from the definitions, or the information available is insufficient to substantiate the type of historical right, the claimant will be contacted pursuant to Rule 44, W.R.C.E.R.

(2) Claims for reserved rights will not be examined while negotiations for the conclusion of a compact under Title 85, Chapter 2, Part 7, MCA, are being pursued except as directed by the water court.

**Rule 13(c).  Standardizing incomplete priority date.**  Each claim will be reviewed to identify that the priority date (i.e., day, month, and year) on the claim form is complete and consistent with the submitted documentation.

(1) When no specific day, month, season, or year date is on the claim form, information in the claim file will be checked to see if a complete priority date exists.

(2) The priority date on the claim form will be compared with the priority date referred to in the submitted documentation.

(3) Late claims will be reviewed to determine their subordination status pursuant to 85-2-221(3), MCA. An enforceable priority date of June 30, 1973 (11:59 P.M.) will be assigned to late claims that are subordinate to valid, timely filed claims under § 85-2-221(3)(f)(i), MCA.

**Rule 13(d). Examining priority date.** When the claimed priority date is inconsistent, the department will gather further facts and data pertaining to the specific claim. The claimant may be contacted pursuant to Rule 44, W.R.C.E.R. Discrepancies in the claimed priority date that may require claimant contact include, but are not limited to:

(1) documentation to support a decreed or filed appropriation right was not submitted;

(2) no priority date has been claimed;

(3) the priority date on the claim form of a decreed right differs or cannot be identified from the submitted documentation;

(4) the priority date on the claim form of a filed surface water appropriation (1885 surface water statutes) is other than the earliest date on the document;

(5) the priority date on the claim form of a filed groundwater appropriation (1961 groundwater statutes, sections 89-2911 et seq., RCM 1947) is not supported with documentation or is other than the date the documentation was filed with the county clerk and recorder;

(6) the priority date on the claim form of a use right is other than the date of first use or as specified in the documentation;

(7) the source or POU on the claim form differs significantly from the source or POU provided in the priority date

documentation;

(8) duplicate claims of the same water right filed by the same individual are identified;

(9) the claimed priority date is post-June 30, 1973;

(10) the claimed priority date is earlier than settlement within a basin or subbasin according to historical records;

(11) a sprinkler system is claimed with a priority date preceding 1950; or

(12) the claimed priority date of any claim based on the same documentation is inconsistent.

**Rule 13(e). Multiple priority dates.** When more than one priority date is indicated in a claim, the multiple priority dates will be identified according to this rule. The claimant may be contacted pursuant to Rule 44, W.R.C.E.R. When the two or more priority dates are confirmed, the claim will be sent to the water court requesting a review for possible implied claims pursuant to Rule 35, W.R.C.E.R.

**Rule 13(f). Changing priority dates.** The claimed type of water right or priority date will not be changed during the department's examination unless:

(1) amended by the claimant; and

(2) clarified by the department;

(3) to complete day, month, season date or general year when the claimed priority date is incomplete:

(i) if no day date, the last day of the month will be used;

(ii) if no month date, the last month of the year will be used;

(iii) if a general year is claimed, the date at the end of the period will be used;

(iv) if a season is claimed, the following dates will be used:

(A) Fall   - December 19,

(B) Winter - March 19,

(C) Spring - June 19,

(D) Summer - September 19;

(4) to reflect the date a GW2 or GW3 groundwater notice was filed with the county clerk in compliance with the 1961 groundwater statutes.  The following remark shall be added to the water right abstract:

Example:
THE PRIORITY DATE OF THIS WATER RIGHT HAS BEEN CHANGED TO THE DATE OF FILING THE NOTICE OF COMPLETION OF GROUNDWATER APPROPRIATION (FORM GW2/GW3). THE PRIORITY DATE MAY BE CONTESTED BY PROPER OBJECTION.

or

(5) to reflect the date the claim form was received by the department when no indication that a groundwater notice was filed in compliance with the 1961 groundwater statutes.  The following remarks shall be added to the water right abstract:

Examples:
THIS IS AN EXISTING RIGHT.  ITS POST 1973 PRIORITY DATE

39

IS DECREED PURSUANT TO SECTION 85-2-306(2) MCA.

THE PRIORITY DATE OF THIS WATER RIGHT HAS BEEN CHANGED TO THE FILING DATE OF THE STATEMENT OF CLAIM. THE PRIORITY DATE MAY BE CONTESTED BY PROPER OBJECTION.

**Rule 13(g).  Summary report.**  In the summary report to the water court, the department shall provide on each abstract the following data and facts concerning the priority date:

(1) the claimed or clarified type of historical right;

(2) the claimed or clarified priority date, or the priority date as specified in these rules;

(3) identification of unique aspects or features of the priority date;

(4) a notation of changes made during the department's examination; and

(5) remarks concerning unresolved issues or questions about the claimed priority date such as the following situations:

(i) questions concerning the claimed priority date or claimed type of historical right as specified in this rule;

(ii) a use right or a filed right appears improperly claimed on a prior decreed source; or

(iii) no priority date has been claimed.

## RULE 14.  FLOW RATE

**Rule 14(a).  Identifying flow rate.**  Facts and information concerning flow rate for the claimed system will be identified using information in the claim along with other data gathered by the department.

**Rule 14(b). Guideline.** The guideline for irrigation within a basin or subbasin will be the flow rate necessary to reasonably irrigate one acre of crop.

(1) The flow rate guideline will be 17 gallons per minute per acre (gpm/ac) and was based on:

(i) the commonly accepted method of irrigation;

(ii) the peak consumptive use of alfalfa during a drought year growing season; and

(iii) a reasonable efficiency for the method of irrigating the field.

(2) The flow rate guideline for reservoirs associated with irrigation use claims will be as follows:

(i) for onstream reservoirs a flow rate guideline will not be identified.

(ii) for offstream reservoirs the flow rate guideline for storage will be the capacity of the diversion and conveyance system. If there is no information regarding the capacity of the diversion and conveyance system, or the system is shared by more than one claimant, the flow rate guideline of 17 gpm/ac will be used.

(3) The department, in conjunction with the water court, may hold public meetings within the basin or subbasin to gather further facts, data, and public comment so that reasonable water use guidelines are identified for the area. See Rule 32, W.R.C.E.R.

**Rule 14(c). Examining flow rate.** When the claimed flow rate differs from the guideline, the department may gather further data and facts in an attempt to determine the actual flow rate for the specific claim. The claimant may be contacted pursuant to Rule

44, W.R.C.E.R.  In addition, an on-site visit may be conducted pursuant to Rule 44, W.R.C.E.R.  Discrepancies that may require claimant contact include, but are not limited to:

(1) the claimed flow rate on a per acre basis exceeds the guideline using the acreage identified by the department;

(2) the claimed flow rate appears insufficient to satisfy the purpose; and

(3) no flow rate was claimed.

**Rule 14(d). Type of historical right.**  Changes may be made to the claimed flow rates for the following types of irrigation claims.

(1) For irrigation claims based on prior decreed rights, no changes to the claimed flow rate will be made.  If the claimed flow exceeds 17 gpm/ac guideline, a remark shall be added to the water right abstract:

Example:
THE CLAIMED FLOW RATE EXCEEDS THE 17 GPM PER ACRE GUIDELINE AND CANNOT BE CONFIRMED DUE TO LACK OF DATA.  THE FLOW RATE EQUALS XX.XX GPM PER ACRE.

(2) For irrigation claims based on filed appropriation or use rights, where an onstream reservoir is not the primary means of diversion, flow rates exceeding 17 gpm/ac will be reduced to this guideline unless:

(i) information in the claim file clearly substantiates the claimed flow rate; or

(ii) information to support the actual flow rate is obtained through claimant contact.

When a claimed flow rate is reduced to the 17 gpm/ac guideline, a remark shall be added to the water right abstract:

Example:
THE FLOW RATE OF THIS CLAIM HAS BEEN REDUCED TO THE GUIDELINE OF 17 GPM PER ACRE.  THE FLOW RATE MAY BE CONTESTED BY PROPER OBJECTION.

(3) For irrigation claims involving only water from onstream reservoirs based on filed appropriation or use rights, a flow rate will not be decreed.  A remark shall be added to the water right abstract:

Example:
A SPECIFIC FLOW RATE HAS NOT BEEN DECREED FOR THIS USE FROM THIS ONSTREAM RESERVOIR.

(4) For irrigation claims involving a reservoir where stored water is not utilized, a flow rate will be decreed.  A remark shall be added to the water right abstract:

Example:
PRIMARILY A DIRECT FLOW SYSTEM; FLOW RATE RETAINED.

(5) For direct flow water spreading irrigation systems without reservoirs, a flow rate will not be decreed.  A remark shall be added to the water right abstract:

Example:
A SPECIFIC FLOW RATE HAS NOT BEEN DECREED BECAUSE THIS USE CONSISTS OF DIRECT FLOW WATER SPREADING.

(6) For natural subirrigation or natural overflow, a flow rate will not be decreed.  A remark shall be added to the water right abstract:

Examples:
NO FLOW RATE HAS BEEN DECREED FOR THIS USE OF
NATURAL SUBIRRIGATION.

NO FLOW RATE HAS BEEN DECREED FOR THIS NATURAL
OVERFLOW METHOD OF IRRIGATION.

**Rule 14(e). Decree exceeded.** When the flow rate of a prior decreed water right has been exceeded by respectively filed claims, the parties involved will be contacted pursuant to Rule 44, W.R.C.E.R. If the parties do not reach agreement among themselves to correct the over-claimed flow rate, the issue shall be identified in the department's summary report to the water court.

**Rule 14(f). Changing flow rates.** The claimed flow rate will not be changed during the department's examination unless:

(1) amended by the claimant;

(2) clarified by the department;

(3) as authorized in part (d) of this rule; and

(4) standardized as to units of measure according to Rule 4, W.R.C.E.R.

**Rule 14(g). Summary report.** In the summary report to the water court, the department shall provide on each abstract the following data and facts concerning the flow rate:

(1) the claimed or clarified flow rate, or changes authorized by this rule;

(2) identification of unique aspects or features of the flow rate;

(3) a notation of changes made during the department's examination; and

(4) remarks concerning unresolved issues or questions about the claimed flow rate, such as the claimed flow rate appears excessive for the specific application and delivery methods.

## RULE 15.  VOLUME

**Rule 15(a).  Identifying volume.**  Facts and information concerning the volume of the claimed system will be identified using information in the claim along with other data gathered by the department.

**Rule 15(b).  Identifying climatic area.**  The climatic area of the claimed place of use will be identified on the abstract of each irrigation right.  The climatic area identification will be determined from the United States Department of Agriculture Natural Resource Conservation Service climatic area map of Montana.

**Rule 15(c).  Direct flow irrigation claims.**  For direct flow irrigation claims, except water spreading systems and irrigation systems involving reservoirs, a volume will not be decreed.  A remark shall be added to the abstract of direct flow irrigation rights.

Example:
THE TOTAL VOLUME OF THIS RIGHT SHALL NOT EXCEED THE AMOUNT PUT TO HISTORICAL AND BENEFICIAL USE.

**Rule 15(d).  Direct flow irrigation claims decreed by volume in prior decree.**  If a direct flow irrigation claim has been decreed by volume in a prior decree, the claimed volume shall be included on the water right abstract.  A remark shall be added:

Example:
THIS VOLUME WAS DECREED IN A PRIOR DECREE, CASE NUMBER 2345, MISSOULA COUNTY, MONTANA.

**Rule 15(e). Decreeing volume for water spreading irrigation systems without reservoirs.** A volume for water spreading irrigation systems without reservoirs will be decreed. The volume guideline for these systems will be the peak consumptive use of alfalfa in a drought year growing season.

(1) The peak consumptive uses of alfalfa in a drought year growing season, listed by climatic area are:

(i) Climatic Area I    2.3 acre-feet per acre;

(ii) Climatic Area II    2.0 acre-feet per acre;

(iii) Climatic Area III   1.9 acre-feet per acre;

(iv) Climatic Area IV    1.7 acre-feet per acre; and

(v) Climatic Area V    1.4 acre-feet per acre.

(2) When the claimed volume on a water spreading claim exceeds the guideline, the volume will be reduced to the guideline unless:

(i) information in the claim file clearly substantiates the claimed volume; or

(ii) information to support the actual volume is obtained through claimant contact.

When the claimed volume is reduced to the water spreading guideline, a remark shall be added to the water right abstract:

Example:
THE VOLUME OF THIS CLAIM HAS BEEN REDUCED TO THE GUIDELINE OF X.XX ACRE FEET PER ACRE. THE VOLUME MAY BE CONTESTED BY PROPER OBJECTION.

**Rule 15(f). Decreeing volume for irrigation systems with**

**stored water from reservoirs.** The claimed volume for irrigation systems using stored water from reservoirs will be decreed. There is no specific volume guideline for these systems. To confirm the claimed volume, facts and data will be collected by the department following the procedures specified in Rule 10(b), W.R.C.E.R.

For irrigation claims involving a reservoir where stored water is not utilized, a volume will not be decreed. A remark shall be added to the water right abstract:

Example:
PRIMARILY A DIRECT FLOW SYSTEM; VOLUME NOT DECREED.

**Rule 15(g).  Changing volume.** The claimed volume will not be changed during the department's examination unless:

(1) amended by the claimant;

(2) clarified by the department;

(3) as authorized in parts (c) and (e) of this rule; or

(4) standardized as to units of measure according to Rule 4, W.R.C.E.R.

**Rule 15(h).  Summary report.** In the summary report to the water court, the department shall provide on each abstract the following data and facts concerning the volume:

(1) the claimed or clarified volume, or changes authorized by this rule;

(2) climatic area;

(3) identification of unique aspects or features of the volume;

(4) a notation of changes made during the department's

47

examination; and

(5) remarks concerning unresolved issues or questions about the claimed volume, such as the following situations:

(i) the maximum feasible volume when the flow rate to be decreed cannot deliver the volume to be decreed during the claimed period of use;

(ii) when a claimed volume to be decreed is greater than two times the capacity of the reservoir or exceeds a reasonable number of fills; or

(iii) no volume claimed.

**RULE 16.  PERIOD OF USE**

**Rule 16(a).  Identifying period of use.**  Facts and information concerning the period of use will be identified using information in the claim along with other data gathered by the department.  The period of use will be identified by the earliest month and day to the latest month and day that water has been used within a calendar year.

(1) The claimed period of use of flood and sprinkler systems will be compared to the following irrigation period of use guidelines:

(i) Climatic Area I:  March 15 to November 15;

(ii) Climatic Area II:  April 1 to October 30;

(iii) Climatic Area III:  April 15 to October 15;

(iv) Climatic Area IV:  April 20 to October 10; and

(v) Climatic Area V:  April 25 to October 5.

(2) The period of use guideline for claims involving water

spreading systems, natural subirrigation and natural overflow will be year round use.

(3) The documentation will be examined for conditions or limitations that may exist on the period of use.

**Rule 16(b).  Examining period of use.**  When the claimed period of use is incomplete or inconsistent, the department will gather further facts and data pertaining to the specific claim.  The claimant may be contacted pursuant to Rule 44, W.R.C.E.R. Discrepancies in the claimed period of use that may require claimant contact include, but are not limited to:

(1) no period of use is claimed;

(2) the claimed period of use differs significantly from the period of use guidelines specified in this rule; or

(3) the period of use on the claim form differs significantly from the period of use specified in the documentation.

**Rule 16(c).  Changing period of use.**  The claimed period of use of a water right will not be changed during the department's examination unless:

(1) amended by the claimant;

(2) clarified by the department; or

(3) to complete the period of use to year round for claims involving water spreading systems, natural subirrigation and natural overflow when no period of use has been claimed or the period of use claimed is not year round and there are no reasons in accordance with these examination rules to contact the claimant.

**Rule 16(d).  Summary report.**  In the summary report to the water court, the department shall provide on each abstract the

following data and facts concerning the period of use:

> (1) the claimed or clarified period of use, or changes authorized by this rule;

> (2) identification of unique aspects or features of the period of use, such as: the right includes or is limited to high or flood waters.

> (3) a notation of changes made during the department's examination; and

> (4) remarks concerning unresolved issues or questions about the claimed period of use such as the claimed period of use exceeds the guidelines for the climatic area.

Example:
THE CLAIMED PERIOD OF USE EXCEEDS THE USUAL GROWING SEASON FOR THIS CLIMATIC AREA WHICH IS APRIL 15 TO OCTOBER 19.

## III.  DOMESTIC CLAIMS

### RULE 17.  REFERENCE TO IRRIGATION CHAPTER
This chapter applies to claims for domestic, multiple domestic and lawn and garden uses.  Except as specifically provided in this chapter, the department's examination of domestic claims shall follow the procedures described in Chapter II for irrigation claims.  This chapter contains specific examination procedures for the following elements of a domestic water right:

> (1)   place of use;

> (2)   flow rate and volume; and

> (3)   period of use.

### RULE 18.  PLACE OF USE (POU)

**Rule 18(a).  Identifying place of use.**  The place of use for domestic purposes will be identified and described by the nearest reasonable and concise legal land description and the associated irrigated acreage.  The POU may include the house, garden or other facilities for this purpose.

(1) The information in the claim, topographic maps, aerial photographs, Water Resources Survey information, county land ownership records, U. S. National Forest Service maps, Bureau of Land Management maps, as well as other sources available to the department may be used to review the claimed POU and associated claimed acreage.

(2) When the claimed legal land description or claimed acreage cannot be substantiated, the department will gather further facts and data.  The claimant may be contacted for additional information pursuant to Rule 44, W.R.C.E.R. Discrepancies in the claimed place of use that may require claimant contact include, but are not limited to:

(i) no legal land description is given for the claimed place of use;

(ii) the claimed legal land description or claimed acreage is vague or incomplete;

(iii) the claimed legal land description or claimed acreage is inconsistent with the source, point of diversion, or purpose claimed; and

(iv) a claimed POU of one party overlaps any portion of the claimed POU of another party.

**Rule 18(b).  Examining place of use.**  The claimant's map(s) and at least one other post-priority date data source, when available, will be used to examine the acreage claimed.

(1) When the acreage claimed exceeds a reasonable

acreage, generally 5 acres, for lawn and garden or shelterbelt purposes, the claimant will be contacted pursuant to Rule 44, W.R.C.E.R.

(2) When the acreage identified by the department differs from the acreage claimed by more than the amount specified in exhibit B, the claimant will be contacted pursuant to Rule 44, W.R.C.E.R.

**Rule 18(c).  Changing place of use.**  The claimed place of use of a water right will not be changed during the department's examination unless:

(1) amended by the claimant; or

(2) clarified by the department to the nearest reasonable and concise legal land description.

**Rule 18(d).  Summary report.**  In the summary report to the water court, the department shall provide on each abstract the following data and facts concerning the place of use:

(1) the claimed or clarified irrigated acreage;

(2) the claimed or clarified legal land description;

(3) additional legal land descriptions identified by the department such as government lots, subdivisions, certificates of survey, homestead entry surveys, and mineral surveys;

(4) identification of unique aspects or features of the place of use;

(5) a notation of changes made during the department's examination; and

(6) remarks concerning unresolved issues or questions about the claimed place of use such as the following situations:

(i) the acreage found on a data source differs from the acreage claimed by more than the amount specified in Exhibit B; or

(ii) the claimed place of use could not be identified.

**RULE 19.  FLOW RATE AND VOLUME**

**Rule 19(a).  Identifying flow rate and volume.**  Facts and information concerning flow rate and volume for domestic use will be identified using information in the claim along with other data gathered by the department.

**Rule 19(b).  Guidelines.**  The flow rate and volume guidelines for domestic use within a basin or subbasin will be as follows:

(1) the flow rate guideline that would reasonably supply domestic use will be 35 gallons per minute;

(2) the volume guideline will be:

(i) one and one-half acre-feet per household;

(ii) two and one-half acre-feet per acre of lawn and garden or shelter belt up to a reasonable amount for domestic irrigation (generally 5 acres or less);

(3) the flow rate and volume guidelines for reservoirs associated with domestic use claims will be as follows:

(i) for domestic use involving only water from onstream reservoirs a flow rate guideline will not be identified, and a flow rate will not be decreed.  A remark shall be added to the water right abstract;

Example:
A SPECIFIC FLOW RATE HAS NOT BEEN DECREED FOR THIS USE FROM THIS ONSTREAM RESERVOIR.

(ii) for offstream reservoirs the flow rate guideline for storage will be the capacity of the diversion and conveyance system.  If there is no information regarding the capacity of the diversion and conveyance system, or the system is shared by more than one claimant, the flow rate guideline of 35 gallons per minute will be used;

(iii) the volume guideline will be one and one half acre-feet per household and two and one-half acre-feet per acre of lawn and garden or shelterbelt, plus a reasonable amount for evaporation.  The minimum volume guideline for domestic use will be 1.5 acre-feet.

**Rule 19(c).  Identifying number of households.**  The department will use the information in the claim as well as other information to identify the number of households served by the water right in the place of use.

(1) Domestic claims - the number of households for a domestic claim is one.

(2) Multiple domestic claims - the number of households may be calculated based on:

(i) the number of persons or households indicated in the claim (five persons will be considered equivalent to one household); or

(ii) the number of dwellings indicated on a map or an aerial photograph of the place of use.

(3) When the number of households cannot be identified from the claim or available information, the claimant will be contacted pursuant to Rule 44, W.R.C.E.R.

**Rule 19(d).  Examining flow rate and volume.**  When the claimed flow rate or volume differs from the guideline, the

department will gather further data and facts in an attempt to determine the actual flow rate or volume for the specific claim. The claimant may be contacted pursuant to Rule 44, W.R.C.E.R. Discrepancies that may require claimant contact include, but are not limited to:

(1) the number of households or the number of acres of domestic irrigation cannot be determined;

(2) the claimed flow rate exceeds the guideline;

(3) the claimed volume exceeds the guideline for number of households plus lawn and garden or shelterbelt acreage; or

(4) the claimed flow rate or claimed volume appear to be in error, inconsistent, or insufficient to satisfy the purpose.

**Rule 19(e). Decree exceeded.** When the flow rate of a prior decreed water right has been exceeded by respectively filed claims, the parties involved may be contacted pursuant to Rule 44, W.R.C.E.R. If the parties do not reach agreement among themselves and correct the over claimed flow rate, the issue shall be identified in the department's summary report to the water court.

**Rule 19(f). Changing flow rate and volume.** The claimed flow rate and volume of a water right will not be changed during the department's examination unless:

(1) amended by the claimant;

(2) clarified by the department;

(3) as authorized in part (b) of this rule; or

(4) standardized as to units of measure according to Rule 4, W.R.C.E.R.

**Rule 19(g).  Summary report.**  In the summary report to the water court, the department shall provide on each abstract the following data and facts concerning the flow rate and volume:

(1) the claimed or clarified flow rate, or changes authorized by this rule;

(2) the claimed or clarified volume, or changes authorized by this rule;

(3) identification of unique aspects or features of the flow rate and volume;

(4) a notation of changes made during the department's examination; and

(5) remarks concerning unresolved issues or questions about the claimed flow rate and volume such as the following situations:

(i) the claimed flow rate or volume cannot be confirmed or appears excessive for this purpose; or

(ii) the claimed volume exceeds the maximum feasible volume when the claimed flow rate cannot deliver the claimed volume during the claimed period of use.

### RULE 20.  PERIOD OF USE

**Rule 20(a).  Identifying period of use.**  Facts and information concerning the period of use for domestic purposes will be identified using the information in the claim together with any other data gathered by the department.  The period of use will be identified by the earliest month and day to the latest month and day that water has been used within a calendar year.

(1) The period of use guideline for domestic and multiple domestic purposes will be year round use.

(2) The irrigation period of use guidelines specified in Rule 16, W.R.C.E.R. will be the criteria for examining lawn and garden purposes.

(3) The documentation will be examined for conditions or limitations that may exist on the period of use.

**Rule 20(b).  Examining period of use.**  When the claimed period of use is incomplete or inconsistent, the department will gather further facts and data pertaining to the specific claim.  The claimant may be contacted pursuant to Rule 44, W.R.C.E.R. Discrepancies in the claimed period of use that may require claimant contact include, but are not limited to:

(1) no period of use is claimed;

(2) the claimed period of use differs significantly from the period of use guidelines specified in this rule; or

(3) the period of use on the claim form differs significantly from the period of use specified in the documentation.

**Rule 20(c).  Changing periods of use.**  The claimed period of use of a water right will not be changed during the department's examination unless:

(1) amended by the claimant;

(2) clarified by the department; or

(3) to complete the period of use to year round for domestic and multiple domestic claims when no period of use has been claimed.

**Rule 20(d).  Summary report.**  In the summary report to the water court, the department shall provide on each abstract the following data and facts concerning the period of use:

(1) the claimed or clarified period of use, or changes authorized by this rule;

(2) identification of unique aspects or features of the period of use;

(3) a notation of changes made during the department's examination; and

(4) remarks concerning unresolved issues or questions about the claimed period of use as specified in this rule.

# IV.  STOCKWATER CLAIMS

## RULE 21.  REFERENCE TO IRRIGATION CHAPTER

Except as specifically provided in this chapter, the department's examination of stockwater claims shall follow the procedures described in Chapter II for irrigation claims. This chapter contains specific examination procedures for the following elements of a stock water right:

(a) point of diversion;

(b) place of use;

(c) flow rate and volume; and

(d) period of use.

## RULE 22.  POINT OF DIVERSION (POD)

The department's examination of the claimed POD for stockwater claims shall follow the procedures described in Rule 8, W.R.C.E.R.  In addition, the following procedures will apply to the examination of the POD for stockwater claims.

(a)  For direct instream surface water stock use, the legal land description of the POD will be the same as the legal land description of the POU.

(b)  The claimed POD may be revised by the department so that the POD and POU legal land descriptions for direct instream surface water stock use will be the same.

**RULE 23.  PLACE OF USE (POU)**
**RULE 23(a).  Identifying place of use.**  The place of use for stock purposes will be identified and described by the nearest reasonable and concise legal land description.  The POU is the actual place where the stock drink the water.

(1) The information in the claim, topographic maps, aerial photographs, U. S. National Forest Service maps, Bureau of Land Management maps, Water Resources Survey information, county land ownership records, as well as other sources available to the department may be used to review the POU legal land descriptions.

(2) When the claimed legal land description cannot be substantiated, the department will gather further facts and data. The claimant may be contacted for additional information pursuant to Rule 44, W.R.C.E.R.  Discrepancies in the claimed place of use that may require claimant contact or an on-site visit include, but are not limited to:

(i) no legal land description is given for the claimed place of use;

(ii) the claimed legal land description is incomplete; and

(iii) the claimed legal land description is inconsistent with the source, point of diversion, or purpose claimed.

**RULE 23(b).  Changing place of use.**  The claimed place of

use of a water right will not be changed during the department's examination unless:

(1) amended by the claimant;

(2) clarified by the department to the nearest reasonable and concise legal land description; or

(3) revised so that the POU and POD legal land descriptions for direct instream surface water stock use will be the same.

**RULE 23(c). Summary report.** In the summary report to the water court, the department shall provide on each abstract the following data and facts concerning the place of use:

(1) the claimed or clarified legal land description or changes authorized by this rule;

(2) additional legal land descriptions identified by the department such as government lots, subdivisions, certificates of survey, homestead entry surveys, and mineral surveys;

(3) identification of unique aspects or features of the place of use;

(4) a notation of changes made during the department's examination; and

(5) remarks concerning unresolved issues or questions about the claimed place of use such as the claimed place of use could not be identified.

**RULE 24. FLOW RATE AND VOLUME**
**RULE 24(a). Identifying flow rate and volume.** Facts and information concerning flow rate and volume for stockwater use will be identified using information in the claim along with other data gathered by the department.

**RULE 24(b). Flow rate guideline.** The flow rate guideline for stock use within a basin or subbasin will be as follows:

(1) The flow rate guideline for wells, developed springs, pumped diversions, or gravity flow pipelines will be 35 gallons per minute.

(2) There will be no flow rate guideline for stock drinking from the source either directly, from a ditch system, or from an undeveloped spring. For these types of stock use, a specific flow rate will not be decreed. A remark shall be added to the water right abstract.

Example:
A SPECIFIC FLOW RATE HAS NOT BEEN DECREED BECAUSE THIS USE CONSISTS OF STOCK DRINKING DIRECTLY FROM THE SOURCE OR FROM A DITCH SYSTEM. THE FLOW RATE IS LIMITED TO THE MINIMUM AMOUNT HISTORICALLY NECESSARY TO SUSTAIN THIS PURPOSE.

(3) The flow rate guideline for reservoirs associated with stockwater use claims will be as follows:

(i) For stockwater claims involving only water from on-stream reservoirs a flow rate guideline will not be identified, and a flow rate will not be decreed. A remark shall be added to the water right abstract.

Example:
A SPECIFIC FLOW RATE HAS NOT BEEN DECREED FOR THIS USE FROM THIS ONSTREAM RESERVOIR. THE FLOW RATE IS LIMITED TO THE MINIMUM AMOUNT HISTORICALLY NECESSARY TO SUSTAIN THIS PURPOSE.

(ii) For offstream reservoirs the flow rate guideline for storage will be the capacity of the diversion and conveyance system.  If there is no information regarding the capacity of the diversion and conveyance system, or the system is shared by more than one claimant, the flow rate guideline of 35 gallons per minute will be used.

**RULE 24(c).  Volume guideline.**  A volume for stockwater claims will not be quantified except as directed by the water court.  When a volume is not quantified, the following remark shall be added to the water right abstract.

Example:
THIS RIGHT INCLUDES THE AMOUNT OF WATER CONSUMPTIVELY USED FOR STOCK WATERING PURPOSES AT THE RATE OF 30 GALLONS PER DAY PER ANIMAL UNIT. ANIMAL UNITS SHALL BE BASED ON REASONABLE CARRYING CAPACITY AND HISTORICAL USE OF THE AREA SERVICED BY THIS WATER SOURCE.

If the water court directs that volumes be quantified for certain stockwater claims, the water court, in consultation with the department, shall determine appropriate volume guidelines.

**RULE 24(d).  Examining flow rate and volume.**  When the claimed flow rate or volume differs from the guideline, the department will gather further data and facts in an attempt to determine the actual flow rate or volume for the specific claim. The claimant may be contacted pursuant to Rule 44, W.R.C.E.R. Discrepancies that may require claimant contact include, but are not limited to:

(1) the claimed flow rate exceeds the guideline established for wells, developed springs, pumped diversion or gravity flow pipelines; or

(2) the claimed flow rate for wells, developed springs, pumped diversion or gravity flow pipelines appears to be in error,

inconsistent or insufficient to satisfy the purpose.

**RULE 24(e).  Decree exceeded.**  When the flow rate of a prior decreed water right has been exceeded by respectively filed claims, the parties involved may be contacted pursuant to Rule 44, W.R.C.E.R.  If the parties do not reach agreement among themselves and correct the over claimed flow rate, the issue shall be identified in the department's summary report to the water court.

**RULE 24(f).  Changing flow rate or volume.**  The claimed flow rate and claimed volume of a water right will not be changed during the department's examination unless:

(1) amended by the claimant;

(2) clarified by the department;

(3) as authorized in parts (b) and (c) of this rule; or

(4) standardized as to units of measure according to Rule 4, W.R.C.E.R.

**RULE 24(g).  Summary report.**  In the summary report to the water court, the department shall provide on each abstract the following data and facts concerning the flow rate and volume:

(1) the claimed or clarified flow rate, or changes authorized by this rule;

(2) the claimed or clarified volume, or changes authorized by this rule;

(3) identification of unique aspects or features of the flow rate and volume;

(4) a notation of changes made during the department's examination; and

(5) remarks concerning unresolved issues or questions about the claimed flow rate and volume such as the claimed flow rate or volume to be decreed cannot be confirmed or appears excessive for this purpose.

**RULE 25.  PERIOD OF USE**

**RULE 25(a).  Identifying period of use.**  Facts and data concerning period of use for stockwater purposes will be identified using information in the claim along with other data gathered by the department.  The period of use will be identified by the earliest month and day to the latest month and day that water has been used within a calendar year.

(1) The period of use guideline for stockwater will be year round use.

(2) The documentation will be examined for conditions or limitations that may exist on the period of use.

**RULE 25(b).  Examining period of use.**  When the claimed period of use is incomplete or inconsistent, the department will gather further facts and data pertaining to the specific claim.  The claimant may be contacted pursuant to Rule 44, W.R.C.E.R. Discrepancies in the claimed period of use that may require claimant contact include, but are not limited to:

(1) no period of use is claimed;

(2) the claimed period of use differs significantly from the period of use guideline specified in this rule; or

(3) the period of use on the claim form differs significantly from the period of use specified in the documentation.

**RULE 25(c).  Changing period of use.**  The claimed period of use of a water right will not be changed during the department's examination unless:

(1) amended by the claimant;

(2) clarified by the department; or

(3) no period of use was claimed for the stock claim and claimant contact is non-responsive, then the period of use may be changed to match a multiple use irrigation claim which shares the same point and means of diversion.

**RULE 25(d).  Summary report.**  In the summary report to the water court, the Department shall provide on each abstract the following data and facts concerning the period of use:

(1) the claimed or clarified period of use, or changes authorized by this rule;

(2) identification of unique aspects or features of the period of use;

(3) a notation of changes made during the department's examination; and

(4) remarks concerning unresolved issues or questions about the claimed period of use as specified in this rule.

## V.  OTHER USES CLAIMS

### RULE 26.  REFERENCE TO IRRIGATION CHAPTER

Except as specifically provided in this chapter, the department's examination of other uses claims shall follow the procedures described in Chapter II for irrigation claims. This chapter contains specific examination procedures for the following elements of an "other uses" water right:

(a) purpose;

(b) place of use;

(c) flow rate and volume;

(d) period of use; and

(e) point of diversion and means of diversion for instream or inlake appropriations.

**RULE 27.  PURPOSE**
Water right purposes categorized as "other uses" and governed by this rule include all uses of water for purposes other than stockwater, domestic, and irrigation.  For example, these may include, but are not limited to:

(a) agricultural spraying;

(b) commercial;

(c) fire protection;

(d) fish and wildlife;

(e) fish raceways;

(f) industrial;

(g) institutional;

(h) mining;

(i) municipal;

(j) navigation;

(k) oil well flooding;

(l) power generation;

(m) recreation; and

(n) wildlife.

**RULE 27(b).  Identifying purpose.**  Facts and information concerning the purpose of a water right will be identified using the information in the claim together with any other data gathered by the department.

**Rule 27(c).  Examining purpose.**  When the claimed purpose cannot be substantiated, the department will gather further facts and data pertaining to the specific claim.  The claimant may be contacted pursuant to Rule 44, W.R.C.E.R.  In addition, an on-site visit may be conducted pursuant to Rule 44, W.R.C.E.R.  Discrepancies in the claimed purpose that may require claimant contact or an on-site visit include, but are not limited to:

(1) the purpose cannot be discerned from the information in the claim;

(2) the water use appears to be for a purpose other than that claimed;

(3) the claimed purpose cannot be substantiated; or

(4) several purposes are indicated in the claim as multiple uses of the right.  Fire protection will be considered an incidental use.

**RULE 27(d).  Questionnaire.**  A questionnaire requesting data concerning specific other uses may be sent to claimants.  The questionnaire serves to gather facts and data describing the history, status, and operation of the claimed purpose.

**RULE 27(e).  Municipal uses.**  A water right claim for municipal use that meets the presumption of nonabandonment provisions of 85-2-227, MCA must be examined following the procedures described in Rule 6, W.R.C.E.R.  The department shall not add an issue remark regarding nonuse.  The department shall add the following clarifying remark to the water right abstract:

Example:

THIS WATER RIGHT IS PRESUMED TO NOT BE
ABANDONED PURSUANT TO 85-2-227, MCA.

**RULE 27(f).  Multiple uses.**  All claims under one ownership
will be reviewed to identify multiple uses of a right pursuant to
Rule 41, W.R.C.E.R.

**RULE 27(g).  Changing purpose.**  The claimed purpose of a
water right will not be changed during the department's
examination unless:

(1) amended by the claimant; and

(2) clarified by the department to identify similar
purposes consistently.

**RULE 27(h).  Summary report.**  In the summary report to the
water court, the department shall provide on each abstract the
following data and facts concerning the purpose of a right:

(1) the claimed or clarified purpose;

(2) identification of unique aspects or features of the
purpose;

(3) a notation of changes made during the department's
examination;

(4) remarks concerning unresolved issues or questions
about the claimed purpose; and

(5) wildlife, recreation, and fish and wildlife claims that
do not receive a factual or legal issue remark as a result of the
claims examination process will receive the following remark:
BECAUSE THIS CLAIM DID NOT RECEIVE A FACTUAL OR LEGAL
ISSUE REMARK DURING THE CLAIMS EXAMINATION PROCESS,
THE WATER COURT WILL NOT HOLD A HEARING ON THIS

CLAIM UNDER *Matter of the Adjudication of Existing Rights in Basin 41I*, 2002 MT 216, 311 Mont. 327, 55 P.3d 396 UNLESS A VALID OBJECTION IS FILED UNDER SECTION 85-2-233, MCA, OR THE WATER COURT CALLS THE CLAIM IN ON ITS OWN MOTION UNDER RULE 8, W.R.ADJ.R.

(6) wildlife, recreation, and fish and wildlife claims that receive a factual or legal issue remark as a result of the claims examination process will receive the following remark: THE WATER COURT WILL HOLD A HEARING ON THIS CLAIM TO DETERMINE ITS VALIDITY SUBJECT TO SECTION 85-2-248, MCA, AND *Matter of the Adjudication of Existing Rights in Basin 41I*, 2002 MT 216, 311 Mont. 327, 55 P.3d 396. A HEARING MAY ALSO BE HELD ON THIS CLAIM IF A VALID OBJECTION IS FILED UNDER SECTION 85-2-233, MCA, OR THE WATER COURT CALLS THE CLAIM IN ON ITS OWN MOTION UNDER RULE 8, W.R.ADJ.R.

**RULE 28. PLACE OF USE (POU)**
**RULE 28(a). Identifying place of use.** The place of use for other use purposes will be identified and described to the nearest reasonable and concise legal land description.

(1) The information in the claim, topographic maps, aerial photographs, Water Resources Survey information, county land ownership records, U. S. National Forest Service maps, Bureau of Land Management maps, as well as other sources available to the department may be used to review the POU legal land descriptions.

(2) When the claimed POU cannot be substantiated, the department will gather further facts and data. The claimant may be contacted pursuant to Rule 44, W.R.C.E.R. In addition, an on-site visit may be requested, pursuant to Rule 44, W.R.C.E.R. Discrepancies in the claimed POU that may require claimant contact or an on-site visit include, but are not limited to:

(i) no legal land description is given for the claimed

place of use;

(ii) the claimed legal land description is vague or incomplete; or

(iii) the claimed legal land description is inconsistent with the source, point of diversion, or purpose claimed;

**RULE 28(b). Changing place of use.** The claimed legal land description will not be changed during the department's examination unless:

(1) amended by the claimant;

(2) clarified by the department to the nearest reasonable and concise legal land description; or

(3) revised so that the POU and POD legal land descriptions for instream surface water use will be the same.

**RULE 28(c). Summary report.** In the summary report to the water court, the department shall provide on each abstract the following data and facts concerning the place of use:

(1) the claimed or clarified legal land description;

(2) additional legal land descriptions identified by the department such as government lots, subdivisions, certificates of survey, homestead entry surveys, and mineral surveys;

(3) identification of unique aspects or features of the place of use;

(4) a notation of changes made during the department's examination; and

(5) remarks concerning unresolved issues or questions

about the claimed place of use such as the claimed place of use could not be identified.

**RULE 29.   FLOW RATE AND VOLUME**

**RULE 29(a).   Identifying flow rate and volume.**  Facts and information concerning flow rate and volume for other uses will be identified using information in the claim along with other data gathered by the department.

**RULE 29(b).   Guidelines for claims with a diversion but without a reservoir.**  The flow rate and volume guidelines for the following types of other uses claims within a basin or subbasin, involving a diversion but not involving a reservoir, will be:

(1) All other uses except mining, fire protection, municipal, agricultural spraying.

(i) The flow rate guideline will be the capacity of the diversion and conveyance system using information in the claim and other data gathered by the department.

(ii) The volume guideline will be identified as that which appears reasonable and customary for the specific purpose using information in the claim and other data gathered by the department.

(2) Mining.

(i) The flow rate guideline will be the capacity of the diversion and conveyance system using information in the claim and other data gathered by the department.

(ii) A volume guideline will not be identified, and a volume will not be decreed.  A remark will be added to the water right abstract.

Example:
THIS RIGHT IS LIMITED TO THE VOLUME OF WATER

HISTORICALLY USED FOR MINING PURPOSES.

    (3) Fire Protection.

        (i) The flow rate guideline will be the capacity of the diversion and conveyance system using information in the claim and other data gathered by the department.

        (ii) A volume guideline will not be identified, and no volume will be decreed.  A remark will be added to the water right abstract.

   Example:
THE VOLUME OF THIS RIGHT IS LIMITED TO THE MINIMUM AMOUNTS NECESSARY FOR FIRE PROTECTION PURPOSES.

    (4) Municipal.

        (i) The flow rate guideline will be the capacity of the diversion and conveyance system using information in the claim and other data gathered by the department.

        (ii) The volume guideline will be 250 gallons per capita per day.

    (5) Agricultural Spraying.

        (i) The flow rate guideline will be the capacity of the diversion and conveyance system using information in the claim and other data gathered by the department.

        (ii) The volume guideline will be 2 acre-feet per year or 4 acre-feet per year if a reservoir is involved.

   **RULE 29(c).  Guidelines for claims with reservoirs.**  The flow rate guideline and volume guideline for other uses claims with reservoirs will be as follows:

(1) for other uses claims involving only water from on-stream reservoirs, a flow rate guideline will not be identified, and a flow rate will not be decreed. The following remark shall be added to the water right abstract:

Example:
A SPECIFIC FLOW RATE HAS NOT BEEN DECREED FOR THIS USE FROM THIS ONSTREAM RESERVOIR.

(i) For offstream reservoirs the flow rate guideline for storage will be the capacity of the diversion and conveyance system. If there is no information regarding the capacity of the diversion and conveyance system, or the system is shared by more than one claimant, the flow rate guideline will be that which appears reasonable and customary for the specific purpose.

(ii) The volume for other uses claims involving reservoirs will be decreed. The volume guideline for these systems will be as follows:

(A) When the claimed volume is less than 15 acre-feet, it will generally be accepted as claimed;

(B) When the claimed volume is greater than 15 acre-feet, facts and data will be collected by the department following the procedures specified in Rule 10, W.R.C.E.R. The volume guideline will be the maximum storage capacity plus the estimate of evaporation.

**RULE 29(d). Guidelines for instream use.** For all instream other uses claims, other than claims filed by the Montana Department of Fish, Wildlife and Parks on Murphy Right streams as identified under section 85-801, R.C.M. 1947 (1969), the flow rate and volume guidelines will be the minimum amount necessary to sustain the specific purpose using information in the claim and other data gathered by the department.

**RULE 29(e). Examining flow rate and volume.** When the

73

claimed flow rate or claimed volume differs from the guideline for the identified purpose, the department may gather further data and facts in an attempt to determine the actual flow rate or volume for the specific claim. The claimant may be contacted pursuant to Rule 44, W.R.C.E.R. In addition, an on-site visit may be conducted pursuant to Rule 44, W.R.C.E.R. Discrepancies that may require claimant contact or an on-site visit include, but are not limited to:

(1) a guideline for flow rate or volume cannot be determined from the available information;

(2) the claimed flow rate or claimed volume exceeds the guideline for the identified purpose; or

(3) the claimed flow rate or claimed volume appear to be in error, inconsistent or insufficient to satisfy the identified purpose.

**Rule 29(f). Flow rate and volume for Murphy right claims.** For all claims filed by the Montana Department of Fish, Wildlife and Parks on Murphy Right streams as identified under section 85-801, R.C.M. 1947 (1969), the claimed flow rate and volume will be decreed.

**Rule 29(g). Type of historical right.** Changes may be made to the claimed flow rates and claimed volumes for the following types of other uses claims:

(1) for other uses claims based on prior decreed rights, no changes to the claimed flow rate will be made;

(2) for other uses claims based on filed appropriation or use rights, flow rates will be reduced to the guideline unless:

(i) information in the claim file clearly substantiates the claimed flow rate and volume; or

(ii) information to support the actual flow rate and volume is obtained through claimant contact.

When a claimed flow rate or volume is reduced to the guideline, a remark shall be added to the water right abstract:

Examples:
THE FLOW RATE OF THIS CLAIM HAS BEEN REDUCED TO THE GUIDELINE OF _____.  THE FLOW RATE MAY BE CONTESTED BY PROPER OBJECTION.

THE VOLUME OF THIS CLAIM HAS BEEN REDUCED TO THE GUIDELINE OF _____.  THE VOLUME MAY BE CONTESTED BY PROPER OBJECTION.

**Rule 29(h).  Decree exceeded.**  When the flow rate of a prior decreed water right has been exceeded by respectively filed claims, the parties involved must be contacted pursuant to Rule 44, W.R.C.E.R.  If the parties do not reach agreement among themselves and correct the over claimed flow rate, the issue shall be identified in the department's summary report to the water court.

**Rule 29(i).  Changing flow rate and volume.**  The claimed flow rate and claimed volume of a water right will not be changed during the department's examination unless:

(1) amended by the claimant;

(2) clarified by the department;

(3) as authorized in this rule; or

(4) standardized as to units of measure according to Rule 4, W.R.C.E.R.

**Rule 29(j).  Summary report.**  In the summary report to the water court, the department shall provide on each abstract the

following data and facts concerning the flow rate and volume:

(1) the claimed or clarified flow rate, or changes authorized by this rule;

(2) the claimed or clarified volume, or changes authorized by this rule;

(3) identification of unique aspects or features of the flow rate and volume;

(4) a notation of changes made during the department's examination; and

(5) remarks concerning unresolved issues or questions about the claimed flow rate and volume such as the following situations:

(i) the claimed flow rate or volume appears excessive for the purpose;

(ii) the claimed volume exceeds the maximum feasible volume when the claimed flow rate cannot deliver the claimed volume during the claimed period of use; or

(iii) the claimed flow rate or volume cannot be confirmed.

### RULE 30.  PERIOD OF USE

**RULE 30(a).  Examining period of use.**  Facts and data concerning period of use for other uses purposes will be identified using information in the claim together with other data gathered by the department.  The period of use will be identified by the earliest month and day to the latest month and day that water has been used within a calendar year.

(1) The usual and customary period of use for other uses

claims will vary for the specific purpose identified.  The claimed period of use will be reviewed for reasonableness for the purpose identified.

(2) The documentation will be examined for conditions or limitations that may exist on the period of use.

**RULE 30(b).  Incomplete or inconsistent period of use.** When the claimed period of use is incomplete or inconsistent, the department will gather further facts and data pertaining to the specific claim.  The claimant may be contacted pursuant to Rule 44, W.R.C.E.R.  Discrepancies in the claimed period of use that may require claimant contact include, but are not limited to:

(1) no period of use is claimed;

(2) the claimed period of use differs significantly from that which is usual and customary for the specific purpose identified;

(3) insufficient information is available to determine the usual and customary period of use for the purpose identified; or

(4) the period of use on the claim form differs significantly from the period of use specified in the documentation.

**RULE 30(c).  Changing period of use.**  The claimed period of use of a water right will not be changed during the department's examination unless:

(1) amended by the claimant; or

(2) clarified by the department.

**RULE 30(d).  Summary report.**  In the summary report to the water court, the department shall provide on each abstract the following data and facts concerning the period of use:

(1) the claimed or clarified period of use;

(2) identification of unique aspects or features of the period of use;

(3) a notation of changes made during the department's examination; and

(4) remarks concerning unresolved issues or questions about the claimed period of use such as the following situations:

(i) questions about the claimed period of use as specified in this rule; or

(ii) use of the water is not feasible during winter months.

Example:
THE CLAIMED PERIOD OF USE MAY BE QUESTIONABLE. USE OF THIS WATER MAY NOT BE FEASIBLE DURING WINTER MONTHS.

**RULE 31.  POINT OF DIVERSION (POD) AND MEANS OF DIVERSION FOR INSTREAM OR INLAKE APPROPRIATIONS**

The department's examination of the claimed POD for instream or inlake other uses claims shall follow the procedures described in Rule 8, W.R.C.E.R.  In addition, the following procedures will apply to the examination of the POD for such claims.

(a) For instream water use, the legal land description of the POD will be the same as the legal land description of the POU.

(b) The claimed POD may be revised by the department so that the POD and POU legal land descriptions for instream water use will be the same.

(c) A clarifying remark should be added to the point of diversion to provide a general geographic description of the instream reach claimed and to promote the public's ability to

understand the extent of the claim.

Example:
THIS RIGHT FOR INSTREAM USE APPLIES FROM SMITH DAM IN JONES COUNTY DOWNSTREAM TO THE CONFLUENCE OF THE NORTH FORK OF ROCK CREEK WITH THE GREEN RIVER IN MACON COUNTY.

(d) For all instream or inlake surface appropriations, the claimed means of diversion will be changed during the department's examination to "INSTREAM" or "INLAKE."

## VI.  GENERAL PROVISIONS

**RULE 32.  PUBLIC MEETINGS**
**RULE 32(a).  Purpose of public meetings.**  The department, if directed by the water court pursuant to § 85-2-243, may conduct public meetings in each basin or subbasin.  The purpose of these meetings may include:

(1) gathering facts and data related to flow rate, volume, and period of use for irrigation that may include the usual and customary method of irrigation, crops grown, and growing season within a basin or subbasin;

(2) gathering facts and data related to flow rate, volume, and period of use for other uses of water within a basin or subbasin; and

(3) gathering facts and data addressing any other specific issues that may affect the basin or subbasin.

**RULE 32(b).  Public meetings in conjunction with water court.**  The department may conduct public meetings in each basin or subbasin to provide the public with information on availability of materials at the regional offices and any technical information or procedures used by the department during examination.  These meetings may be held in conjunction with the

water court.

**RULE 32(c).  Time and place.**  Public meetings will be held at a time and place appropriate to the material being presented and convenient to the participants.

**RULE 32(d).  Notice.**  Meetings will be announced using one or more of the following:  radio stations, newspapers, or television stations which have general coverage in the appropriate area.  In addition, notices may be posted in various public locations in the area.  The water court will be notified in writing at least 10 working days prior to announcement.

## RULE 33.  CLARIFICATION

**RULE 33(a).  Clarification of claimed information.** Elements of a water right may be clarified during the department's examination of claims to make elements complete, clear, concise and interpretable as long as the intent of the claimed information is unchanged.  Claimed information may be clarified except when an amendment is required pursuant to Rule 34, W.R.C.E.R. Changes to claimed data made as clarifications will be denoted on the water right abstract.

**RULE 33(b).  Clarification without claimant contact.** Discrepancies in the claimed information, such as the following, may be edited for standardization and consistency without claimant contact as long as the intent of the claimed information is clear:

(1) priority date, period of use, source, POD, POU, means of diversion and type of historical right are not on the claim form but are clearly stated in the documentation;

(2) similar purposes are not referenced consistently;

(3) owner names and addresses are not consistent;

(4) POD and POU discrepancies:

(i) claimed legal land descriptions are not described to the nearest reasonable and concise legal land description;

(ii) legal land descriptions on the claim form and the claimant's map disagree;

(iii) claimed legal land descriptions for direct surface water stock use are not the same;

(iv) legal land descriptions are reversed; or

(v) N, S, E, or W are not indicated in the legal land description for township or range;

(5) common points of diversion or similar means of diversion are not referenced consistently;

(6) source names are not referenced consistently;

(7) flow rate or volume discrepancies:

(i) claimed flow rate or volume units are inconsistent;

(ii) units for flow rate are not on the claim form but are clearly indicated in the documentation; or

(8) priority date discrepancies.

**RULE 33(c).  Clarification with claimant contact.**  When a claim exhibits discrepancies or clerical errors as described in Rule 33(b), W.R.C.E.R. and the claimed intent is unclear, the department will contact the claimant pursuant to Rule 44, W.R.C.E.R.  The correct interpretation of the claimed information will be clearly denoted by the department in the claim file.

Clarifications of this type may be implemented upon instruction from the claimant.

**RULE 33(d).  Correcting clerical errors.**  When an abstract of a claim exhibits clerical errors by the department, such as the following, the discrepancy will be corrected in the computer record:

(1) claimed items were not entered into the computer;

(2) claimed items were entered into the computer incorrectly; or

(3) claimed items were previously clarified incorrectly.

## RULE 34.  AMENDMENTS TO CLAIMS

**RULE 34(a).  Claimant request to modify claim.**  A claimant may request and authorize a modification of their claim prior to that claim's inclusion in an interlocutory decree issued for the particular basin.

**RULE 34(b).  Amendment of claim.**  An amendment is required to alter any element of a claim when that element cannot be clarified or changed in accordance with these rules.

**RULE 34(c).  Amendment form.**  An amendment form or a written request must be submitted by the claimant to authorize an amendment.  An amendment form is attached as Exhibit C.

(1) The amendment request, whether on an amendment form or other written request, must include the amendment and the date.

(2) The amendment request must contain the notarized signature of all current owners of the right as listed in the centralized record system or a legal authorized representative.  The amendment may not be submitted by a non-owner (e.g., tenant,

ranch manager, forest service district employee).

(3) The amendment request may include the reasons for the amendment and may be supplemented with maps, letters, copies of documents, or other materials.

**RULE 34(d).  Processing of amendment.**  An amendment received by the department will be processed in the following manner:

(1) if received prior to printing the decree, it will be microfilmed or scanned, added to the claim file, and the respective elements will be amended in the centralized record system; or

(2) if received after printing of the decree, it will be microfilmed or scanned and sent to the water court.

**RULE 34(e).  Examination of amendment.**  The department will examine amendments according to the procedures in the rule governing the amended element.

**RULE 34(f).  Summary report.**  In the summary report to the water court, the department shall provide on each abstract the following data and facts concerning the amended claim:

(1) the claimed or clarified element as amended;

(2) a remark indicating the date the amendment was received and the water right element changed;

Example:
THE FLOW RATE WAS AMENDED BY THE CLAIMANT ON 04-15-87.

(3) the department's examination information which may include an identification of any other pertinent data, facts or issues; and

(4) remarks concerning unresolved issues or questions about the amendment such as the amendment was not signed by all current owners, or was not notarized.

Examples:
AN AMENDMENT WAS SUBMITTED ON 08-01-98 REQUESTING TO AMEND THE PLACE OF USE.  THE AMENDMENT HAS NOT BEEN IMPLEMENTED AS IT HAS NOT BEEN SIGNED BY ALL OWNERS OF DNRC RECORD.

AN AMENDMENT WAS SUBMITTED 06-11-98 ADJUSTING THE POINT OF DIVERSION, PLACE OF USE, PRIORITY DATE, SOURCE, FLOW RATE, PURPOSE AND PLACE OF STORAGE.  THE AMENDMENT SUBSTANTIALLY CHANGES THE ORIGINALLY FILED STATEMENT OF CLAIM.

## RULE 35.  IMPLIED CLAIMS

**RULE 35(a).  Water court review of implied claims.** Whenever a single claim appears to contain more than one right, the claim will be sent to the water court requesting a review for possible implied claims.

**RULE 35(b).  Authorization of implied claims.**  When the water court, in writing, authorizes implied claims to separate the individual rights, the claimant will be contacted pursuant to Rule 44, W.R.C.E.R. to assist in separating the rights into individual claims.

**RULE 35(c).  Procedure.**  The following items and procedures will apply to implied claims.

(1) The implied claim shall include the items required pursuant to § 85-2-224, MCA.

(2) The claimant's signature and notarization is required, unless otherwise ordered by the water court.

(3) The date received on the implied claim will be the same date as that on the original claim.

**RULE 35(d). Processing implied claims.** Implied claims authorized by the water court shall be processed by the department as follows:

(1) filing fees will be collected pursuant to § 85-2-225, MCA;

(2) the original claim will be referenced on the implied claim;

(3) the implied claim will be clarified, microfilmed or scanned, and entered into the centralized record system; and

(4) the implied claim will be examined by the department according to the rules governing the purpose identified.

**RULE 35(e). Summary report.** In the summary report to the water court, the department shall provide on each abstract the following data and facts concerning the implied claim:

(1) the implied claim information;

(2) a remark referring to the original claim;

Example:
THIS IMPLIED CLAIM WAS AUTHORIZED BY THE WATER COURT BASED ON INFORMATION IN CLAIM NO. 000000-00.

and

(3) the department's examination information which may include an identification of any other pertinent facts, data, and issues.

**RULE 36. CLAIMS FILED AFTER APRIL 30, 1982.**

**RULE 36(a).  Identification.** A claim filed with the department after the 5:00 p.m. April 30, 1982 filing deadline and physically submitted or postmarked on or before July 1, 1996 is a late claim, unless it was exempt from the filing requirements by § 85-2-222, MCA.  Late claims were forfeited pursuant to the conclusive presumption of abandonment under § 85-2-226, MCA. The legislature provided limited remission of the forfeiture of late claims in  § 85-2-221(3), MCA, based on the late claim filing date. Claims for exempt rights filed after 5:00 p.m. April 30, 1982 and physically submitted or postmarked on or before July 1, 1996 are not late claims.

**Rule 36(b).  Claims submitted after July 1, 1996.**
Claims physically submitted or postmarked after July 1, 1996 will not be accepted by the department.

**RULE 36(c).  Examination of claims.**  The department will examine claims filed after April 30, 1982 according to the procedures in these rules for the identified purpose. The date the claim was filed will be specified in a remark.

**RULE 36(d).  Summary report.**  The summary report to the water court shall include all forfeited late claims, remitted late claims, and claims for exempt rights filed between 5:00 p.m. April 30, 1982 and physically submitted or postmarked on or before July 1, 1996, along with all pertinent data and facts.  This includes an abstract of the water right listing the late claim information and the department's examination information.  In addition, remarks denoting the type of late claim will be added as follows:

(1) For a late claim placed in the United States mail and postmarked on or before 5:00 p.m. April 30, 1982, or, if there is no evidence of the date of mailing, there is evidence of execution on or before 5:00 p.m. April 30, 1982, and actual receipt by the department on or before May 7, 1982, a clarifying remark shall be added to the water right abstract:

Example:
CLAIM FILED LATE 05/03/82.  AS MANDATED BY SECTION 85-2-221(3), MCA, THIS CLAIM IS SUBORDINATE, AND THERFORE JUNIOR, TO ALL INDIAN AND FEDERAL RESERVED WATER RIGHTS.

(2) For all other late claims physically submitted to the department or postmarked on or before July 1, 1996, a clarifying remark and an issue remark shall be added to the water right abstract:

Examples:
CLAIM FILED LATE 08/01/85.  AS MANDATED BY SECTION 85-2-221(3), MCA, THIS CLAIM IS SUBORDINATE, AND THEREFORE JUNIOR, TO ALL INDIAN AND FEDERAL RESERVED WATER RIGHTS AND ALL VALID TIMELY FILED CLAIMS BASED ON STATE LAW.

CLAIM FILED LATE 08/01/85.  IN ADDITION TO BEING SUBORDINATE TO ALL INDIAN AND FEDERAL RESERVED WATER RIGHTS AND ALL VALID TIMELY FILED CLAIMS BASED ON STATE LAW, THIS RIGHT MAY ALSO BE SUBORDINATE TO CERTAIN PERMITS AND RESERVATIONS OF WATER.  SEE SECTION 85-2-221 MCA.

(3) For an exempt water right claim filed after 5:00 p.m. April 30, 1982 and physically submitted or postmarked on or before July 1, 1996, a remark shall be added to the water right abstract:

Example:
CLAIM FILED 08/01/85.  THIS RIGHT IS AN EXEMPT RIGHT VOLUNTARILY FILED UNDER SECTION 85-2-222, MCA.

**RULE 37.  TERMINATION OF A CLAIM**
**RULE 37(a).  Procedure for terminating a claim.**  The department shall terminate a water right claim only when it has been withdrawn at the request of the claimant(s).

(1) A written request must be submitted by the claimant to withdraw a claim.  An example request to withdraw form to withdraw a claim from the adjudication process is attached as Exhibit D.

(2) The withdrawal request must be dated with notarized signatures of all current owners of the right as listed in the centralized record system.

(3) The reason for the withdrawal may be included.

**RULE 37(b).  Processing a withdrawal request.**  A withdrawal request and claim will be processed in the following manner.
(1) The withdrawal request will be microfilmed or scanned and entered into the centralized record system.

(2) The claimed information in the centralized record system will be retained but will be denoted as terminated for reference purposes.

(3) The withdrawal request and claim will be maintained by the department.

**RULE 37(c).  Availability of owner name and address.**  The owner name and address will be available to the water court for notice purposes.

**RULE 37(d). Summary report.**  In the summary report to the water court, the department shall provide on each abstract the following data and facts concerning the terminated claim including:

(1) the water right file number;

(2) the owner name and address;

(3) the purpose, source, and point of diversion;

(4) a remark indicating a withdrawn claim

Example:
THIS CLAIM WAS WITHDRAWN FROM THE ADJUDICATION PROCESS AT THE REQUEST OF THE CLAIMANT ON 04/15/87.

and

(5) the department's examination information which may include an identification of any other pertinent facts, data, and issues.


## RULE 38.  OWNERSHIP UPDATES

**RULE 38(a).  Purpose.**  The department shall process ownership updates to water rights in compliance with §§ 85-2-421 through 85-2-426, MCA.  The ownership update does not transfer water rights or legally determine water right ownership.  It updates the department's centralized ownership records reflected on the legal documents that actually transfer water rights.

**RULE 38(b).  Procedure.**  When a water right ownership update has been received, the department will revise the ownership of the right in the centralized record system as follows:

(1) When the entire water right is conveyed to a new owner, the name and address of the new owner will be listed as the owner of the right.  A remark may be added indicating the date the ownership update was received.

Example:
WATER RIGHT OWNERSHIP UPDATE RECEIVED 04/15/87.

(2) When the ownership update denotes a conveyance of a portion of the water right to a new owner:

(i) The water right may be split by the department

89

upon written authorization of all of the claimants.   Remarks may be added to the original claim:

Examples:
WATER RIGHT OWNERSHIP UPDATE RECEIVED 04/15/87.

SPLIT CLAIM NO. _____ WAS GENERATED.

Remarks may be added to the split claim:

Examples:
WATER RIGHT OWNERSHIP UPDATE RECEIVED 04/15/87

THIS SPLIT CLAIM WAS GENERATED BY THE DEPARTMENT BASED ON INFORMATION IN CLAIM NO. _____.

THIS CLAIM NUMBER WAS NOT INCLUDED IN THE BASIN (NAME) DECREE ISSUED ON (DATE).

(ii) The water right may not be split by the department if all claimants have not provided written authorization to split the right.  Remarks may be added indicating that an ownership update has been received:

Examples:
WATER RIGHT OWNERSHIP UPDATE RECEIVED 04/15/87.

OWNERSHIP UPDATE PROCESSED TO ADD NEW OWNERS. THE WATER RIGHT MAY BE SPLIT INTO SEPARATE WATER RIGHTS AFTER FINAL DECREE UPON REQUEST OF THE OWNERS.

(iii) The name and address of a new owner will be added as an additional owner of the right.

(3) When the ownership update identifies a contract for deed, the seller's name may be retained in the department's computer database.

**RULE 38(c).**  Owners involved with an updated water right will be notified by the department using the following procedures:

(1) When a water right ownership update is filed before the printing of the decree, both the buyer and the seller will be notified of the receipt and recording of the ownership update and any split claims resulting from that ownership update.

(2) When a water right ownership update is filed after the printing of the decree, the department will notify both the buyer, the seller, and the water court.  If the right is being split, the reviewer should prepare a memorandum detailing the split to be made and send the memorandum and claim file(s) to the water court to implement the split.

### RULE 39.  CHANGE IN APPROPRIATION RIGHT

**RULE 39(a).  Procedure for pre-July 1, 1973 claims.**  When a pre-July 1, 1973 water right for which a statement of claim has been received is changed pursuant to § 85-2-402, MCA, the department will proceed as follows:

(1) The department will create a new record for the change in the centralized record system.

(2) The department will not update the original claim information to reflect the change when a notice of completion has been received until after the final decree.

**RULE 39(b).  Procedure for post-June 30, 1973 claims.**  When the department finds that a statement of claim appears to reflect a post-June 30, 1973 change, the claimant will be contacted pursuant to Rule 44, W.R.C.E.R. for additional information.  In addition, an on-site visit may be conducted pursuant to Rule 44, W.R.C.E.R.

(1) If an amended claim is submitted to identify the right as it existed before July 1, 1973, the department will process the amended claim according to the rules governing the purpose identified.

(2) If an amended claim is not submitted to identify the right as it existed before July 1, 1973, the department will examine the claim as originally submitted.

**RULE 39(c). Summary report.** In the summary report to the water court, the department shall provide on each abstract the following data and facts concerning a change in appropriation right:

(1) A remark referring to the status of the change application;

Example:
AUTHORIZATION TO CHANGE POINT OF DIVERSION COMPLETED 04/15/87. FILE REFLECTS RIGHT AS IT EXISTED PRIOR TO JULY 1, 1973. APPROVED CHANGES WILL BE UPDATED IN THE CENTRALIZED RECORDS SYSTEM AFTER FINAL DECREE. SEE G(W) 000000-00.

(2) The department's examination information which may include:

(i) an issue remark when the claimed right appears to reflect an unauthorized post-June 30, 1973 change;

Example:
IT APPEARS THAT AN UNAUTHORIZED POST-JUNE 30, 1973 CHANGE IN POINT OF DIVERSION MAY BE REFLECTED IN THIS CLAIM.

or

(ii) an identification of any other pertinent facts, data, and issues.

**RULE 40.  SUPPLEMENTAL RIGHTS**

**RULE 40(a).  Identifying supplemental rights.**  Supplemental rights occur when a claimed place of use of a water right overlaps the claimed place of use on another water right having the same purpose and belonging to the same owner.  The place of use for all claims of one ownership, except claims for stockwater and domestic use, will be reviewed for supplemental rights.

**RULE 40(b).  Supplemental rights remark.**  For irrigation claims, irrigation district claims and "other uses" claims, the supplemental rights relationship will be identified by a remark on the water right abstract.  The remark will identify and limit the flow rate, place of use, and volume and will list the supplemental water rights involved.

**RULE 40(c).  Summary report.**  In the summary report to the water court, the department shall provide on each abstract the following data and facts concerning supplemental rights:

(1) a remark indicating supplemental rights;

Example (Irrigation and Irrigation District Claims):
THE WATER RIGHTS FOLLOWING THIS STATEMENT ARE SUPPLEMENTAL WHICH MEANS THE RIGHTS HAVE OVERLAPPING PLACES OF USE.  THE RIGHTS CAN BE COMBINED TO IRRIGATE ONLY OVERLAPPING PARCELS. EACH RIGHT IS LIMITED TO THE FLOW RATE AND PLACE OF USE OF THAT INDIVIDUAL RIGHT.  THE SUM TOTAL VOLUME OF THESE WATER RIGHTS SHALL NOT EXCEED THE AMOUNT PUT TO HISTORICAL AND BENEFICIAL USE.
 000000-00, 000000-00, 000000-00, 000000-00.

Example (Other Uses Claims):
WHENEVER THE WATER RIGHTS FOLLOWING THIS STATEMENT ARE COMBINED TO SUPPLY WATER FOR THE CLAIMED PURPOSE, EACH IS LIMITED TO THE HISTORICAL FLOW RATE AND PLACE OF USE OF THAT

INDIVIDUAL RIGHT.  THE SUM TOTAL VOLUME OF THESE WATER RIGHTS SHALL NOT EXCEED THE AMOUNT PUT TO HISTORICAL AND BENEFICIAL USE.  000000-00, 000000-00, 000000-00, 000000-00.

and

(2) the department's examination information which may include:

(i) an issue remark when the combined flow rates of supplemental irrigation rights exceed the guideline by 60 gpm per acre; or

(ii) an identification of any other pertinent facts, data, and issues.

**RULE 41.  MULTIPLE USE OF A RIGHT**

**RULE 41(a).  Identifying multiple use.**  A multiple use of a water right occurs when the same appropriation has been used for more than one purpose by the original claimant.

**RULE 41(b).  Examining multiple use.**  All claims filed by the original claimant will be examined to identify multiple uses of a right.  The information in the claim, especially priority date, purpose, type of right, and documentation, together with other data gathered by the department will be used.  In addition, the claimants may be contacted pursuant to Rule 44, W.R.C.E.R.

**RULE 41(c).  Multiple use remark.**  The multiple use of a water right will be identified by a remark on the abstract.

**RULE 41(d). Summary report.**  In the summary report to the water court, the department shall provide on each abstract the following data and facts concerning multiple use of a right:

(1) a remark indicating multiple use;

Example:

THE WATER RIGHTS LISTED FOLLOWING THIS STATEMENT ARE MULTIPLE USES FILED BY THE ORIGINAL CLAIMANT AND BASED ON THE SAME RIGHT.  THE USE OF THIS RIGHT FOR SEVERAL PURPOSES DOES NOT INCREASE THE EXTENT OF THE WATER RIGHT.  RATHER IT DECREES THIS RIGHT TO ALTERNATE AND EXCHANGE THE USE (PURPOSE) OF THE WATER IN ACCORD WITH HISTORICAL PRACTICES.  000000-00, 000000-00.

(2) and the department's examination information which may include an identification of any other pertinent facts, data, and issues.

## RULE 42.  IRRIGATION DISTRICTS
The irrigation district claim form differed from the standard irrigation, domestic, stock, or other uses claim forms in that several water rights from one source for the same place of use could be identified on one form.  The intent of the form was that lengthy place of use descriptions would be listed only once for several rights.  The form was not limited to irrigation districts but could be used by any claimant for any claimed purpose.

(a)    Claims filed on irrigation district forms will be examined by the department according to the rules governing the purpose identified.

(b)    All irrigation districts will have their place of use examined by the department.

(c)    The place of use descriptions will be identified on the abstract of all water rights identified on a irrigation district form.

(d)    In its summary report to the water court, the department shall identify irrigation districts created under Title 85, Chapter 7, MCA.

## RULE 43.  DOCUMENTING THE DEPARTMENT'S EXAMINATION
**RULE 43(a).  Purpose.**  The claim file, maintained by the department as part of the centralized record system, will serve as

the repository of all claimed information and other materials related to the department's examination. All documents related to § 85-2-402, MCA and §§ 85-2-421 through 85-2-426, MCA, will be placed in the claim file. Additionally, all materials added to the claim file will be filmed or scanned for the microfilm or electronic record.

**RULE 43(b). Worksheet.** The department's examination of each element of a water right will be documented on a worksheet. The worksheet will contain an abstract of the clarified claimed information and will serve as a checklist of items to be examined. In addition, the claimed and examined acres for irrigation claims will be mapped.

**RULE 43(c). Documentation.** Telephone contact, personal interviews and field investigations pertaining to a claim will be documented and placed in the claim file. The documentation may include but not be limited to:

(1) persons contacted;

(2) date and time;

(3) location;

(4) address or phone number;

(5) topics discussed; and

(6) facts, data, and issues identified.

**RULE 43(d). Correspondence.** Copies of all written correspondence sent or received by the department pertaining to a claim will be added to the claim file. All written correspondence sent by the department will include the date and the names of addressee and signatory.

**RULE 44. CLAIMANT CONTACT**
**RULE 44(a). Purpose.** The department will use claimant contact as the primary means of gathering facts and data pertaining

to issues on claims unresolved by routine examination procedures.

**RULE 44(b). Means.** The department will initiate contact by the means capable of providing the necessary facts and data in the least intrusive and most efficient manner. The department will attempt to review all claims of an owner to consolidate issues before claimant contact. Claimant contact may be through telephone interviews, written correspondence, or personal interviews, or on-site visits at claimant's invitation.

**RULE 44(c). Documentation.** Claimant contact activity will be documented in the claim file and may include such items as the name of the department employee, the name of person contacted, date, means of contact, telephone number, location, issues covered, and conclusions reached.

(1) All written correspondence and interview reports will be added to the claim file.

(2) The department may send a letter of confirmation to the claimant for data gathered by telephone.

**RULE 44(d). Examining information.** When the department gathers data and facts concerning a claim, the information will be examined according to the rule governing the purpose identified. Pertinent new information will be entered into the centralized record system.

**RULE 44(e). Summary report.** In the summary report to the water court, the department shall provide pertinent information gathered through claimant contact.

**RULE 45. RETURNED MAIL**

**RULE 45(a). Notice of availability.** When a decree is issued, the water court serves, by mail, a notice of availability and abstract of water right to each person who has filed a claim of existing water right or to that person's successor in interest as shown in the department's updated ownership record. The notice of availability is also sent to other persons specified by the water court.

Additional notice proceedings occur as the adjudication of a basin or subbasin advances to final decree.

**RULE 45(b).  Investigation.**  The department shall investigate the reason mail associated with the issuance of a decree is returned by the U.S. Postal Service.  An attempt will be made to research and process returned mail within the time allotted by the water court for claimant action.

**RULE 45(c).  Extent of investigation.**  The department's research to determine the current owner name or current owner address shall include but not be limited to claimant contact, telephone directories, and county records.

**RULE 45(d).  Processing address changes.**  The results of the department's research will be processed as follows.

(1) When the addressee has a new address, the department will correct the address in the centralized record system.  The addressees will be sent their abstract of water right and notice of availability.

(2) When there has been an unrecorded change in ownership, the department will send the current owner a notice of availability, the abstract(s) of water right and a request to file a water right ownership update form pursuant to § 85-2-421 through § 85-2-426, MCA.

(3) When the proper owner or address is not found by the department, the results of the research will be placed in the claim file.

**RULE 45(e).  General certificate of mailing.**  The department shall send the water court a general certificate of mailing certifying that the returned mail has been researched and processed.  The general certificate of mailing will identify the water rights where the current owner or address could not be found.

**RULE 45(f).  Documentation.**  Documents and records involved in processing returned mail shall be placed in the respective water right claim file.

**RULE 45(g).  Miscellaneous.**  Returned mail associated with other stages of the adjudication process will be researched according to procedures similar to this rule.  Previously researched mail where the owner or address could not be found will not be researched again.

## RULE 46. POST-DECREE REVISIONS

**RULE 46(a).  Review of decrees.**  The department may review water court decrees during the objection period.  If clerical errors, computation errors, and other errors or omissions are identified, the water court and claimant shall be notified by the department by an objection or a letter.  The department will add copies of all correspondence and other materials relating to errors to the claim file.

**RULE 46(b).  Error in decreed water right.**  When an error is identified in a decreed water right after the objection period has expired, the department shall notify the water court and claimant by letter.  The letter will include how the error was discovered, the water right elements in error, the proposed correction, any documentation, a copy of the decree abstract with the correction delineated, whether the claimant agrees with the correction, and, when possible, a signed claimant authorization to make the correction.  The department will add copies of all correspondence and other materials relating to errors to the claim file.

**RULE 46(c).  Correcting errors.**  Except as allowed in Rule 3(d), W.R.C.E.R. the department may change the centralized record system to correct errors in claims or include claims post-decree only by written authorization of a water judge or water master.  Upon written authorization from the water judge or water master, the authorization will be microfilmed or scanned, the correction entered into the centralized record system, and a corrected abstract sent to the water court.

## SUMMARY REPORT TO THE WATER COURT
## BY THE DEPARTMENT OF NATURAL RESOURCES AND CONSERVATION

PART A: ABSTRACT OF WATER RIGHT CLAIM
BOULDER RIVER, TRIBUTARY TO JEFFERSON RIVER
BASIN 41E

THE FOLLOWING INFORMATION IS NOT THE DECREE OF THE MONTANA WATER COURT. IT IS AN INFORMATIONAL ABSTRACT PREPARED BY THE DEPARTMENT OF NATURAL RESOURCES AND CONSERVATION (DNRC) AND PROVIDED TO THE WATER COURT FOR ITS USE IN PREPARING THE DECREE FOR THIS BASIN.

AN ASTERISK (*) HAS BEEN PLACED NEXT TO EACH ITEM CHANGED BY THE DNRC DURING THE EXAMINATION PROCESS. THESE CHANGES ARE AUTHORIZED BY THE MONTANA SUPREME COURT WATER RIGHT CLAIMS EXAMINATION RULES OR BY ORDER OF THE WATER COURT.

Water Right Number:  41E 30014863  STATEMENT OF CLAIM
      Version:    1 -- ORIGINAL RIGHT
      Status:     ACTIVE

Owners:        SCHMANSKY RANCH CO
        % FRED SCHMANSKY
        FLOODPLAIN, MT 59000

*Priority Date:    JUNE 19, 1866
    Enforceable Priority Date:  JUNE 19, 1866

Type of Historical Right: FILED

Purpose (use):     IRRIGATION
    Irrigation Type: SPRINKLER/FLOOD

Flow Rate:       63.00 CFS

*Volume:        6,440 AC-FT
    Climatic Area: 4 - MODERATELY LOW

Maximum Acres:    920.00

*Source:        LONG CREEK
    Source Type:   SURFACE WATER

*Point of Diversion and Means of Diversion:

| ID | Govt Lot | Qtr Sec | Sec | Twp | Rge | County |
|----|----------|---------|-----|-----|-----|--------|
| 1 | | NENENE | 4 | 6N | 7W | JEFFERSON |
| Diversion Means: HEADGATE | | | | | | |
| 2 | | SESWSW | 5 | 6N | 7W | JEFFERSON |
| Diversion Means: HEADGATE | | | | | | |

POINT OF DIVERSION NO. 2 IS ON AN UNNAMED TRIBUTARY LONG CREEK.

Reservoir:     OFFSTREAM   Reservoir Name: SCHMANSKY POND

| Govt Lot | Qtr Sec | Sec | Twp | Rge | County |
|----------|---------|-----|-----|-----|--------|
|          | SWSWSW  | 4   | 6N  | 7W  | JEFFERSON |

Surface Area:     0.70 ACRES

Capacity:     17.50 ACRE-FEET

SEE THE RESERVOIR WORKSHEET IN THE CLAIM FILE FOR ADDITIONAL INFORMATION.

Period of Diversion:     JANUARY 1 to DECEMBER 31

Period of Use:     APRIL 15 to AUGUST 15

*Place of Use:

| ID | Acres | Govt Lot | Qtr Sec | Sec | Twp | Rge | County |
|----|-------|----------|---------|-----|-----|-----|--------|
| 1  | 360.00 |         |         | 5   | 6N  | 7W  | JEFFERSON |
| 2  | 320.00 |         | E2      | 32  | 6N  | 7W  | JEFFERSON |
| 3  | 160.00 |         | NE      | 8   | 7N  | 7W  | JEFFERSON |
| 4  | 80.00  |         | N2SE    | 30  | 7N  | 7W  | JEFFERSON |
| Total: | 920.00 |     |         |     |     |     |        |

Remarks:

THE WATER RIGHTS FOLLOWING THIS STATEMENT ARE SUPPLEMENTAL WHICH MEANS THE RIGHTS HAVE OVERLAPPING PLACES OF USE. THE RIGHTS CAN BE COMBINED TO IRRIGATE ONLY OVERLAPPING PARCELS OF THE CLAIMANT'S TOTAL ACRES. EACH RIGHT IS LIMITED TO THE FLOW RATE AND PLACE OF USE OF THAT INDIVIDUAL RIGHT. THE SUM TOTAL VOLUME OF THESE WATER RIGHTS SHALL NOT EXCEED THE AMOUNT PUT TO HISTORICAL AND BENEFICIAL USE.

| 30001224 | 30001225 | 30001226 | 30001227 | 30001228 | 30001229 |
|----------|----------|----------|----------|----------|----------|
| 30001230 | 30014863 |          |          |          |          |

THE WATER RIGHTS LISTED FOLLOWING THIS STATEMENT ARE MULTIPLE USES OF THE SAME RIGHT. THE USE OF THIS RIGHT FOR SEVERAL PURPOSES DOES NOT INCREASE THE EXTENT OF THE WATER RIGHT. RATHER IT DECREES THE RIGHT TO ALTERNATE AND EXCHANGE THE USE (PURPOSE) OF THE WATER IN ACCORD WITH HISTORICAL PRACTICES.

30001218     30001220     30001224     30014863

**PART B: EXAMINATION REPORT**
**THE DNRC EXAMINATION OF THIS CLAIM FOUND NO SIGNIFICANT FACTS, DATA, OR ISSUES TO REPORT TO THE WATER COURT.**

# **EXHIBIT B**



Definition for Claimant Contact Concerning Irrigated Acreage

Contact Point = X±X [(X⁻·⁴⁰⁰⁵¹⁵) (.8)]

Note: When the acreage found by the Department's examination is outside the contact point range, the claimant will be contacted.

TOTAL CLAIMED ACRES (X)

# **EXHIBIT C**

## AMENDMENT
## TO STATEMENT OF CLAIM

Claim Nos.:_____

Owner(s):_____

I make the following amendment(s) to the above statement of claim(s):

*(Complete only those sections that require amendment.)*

1. **Owner of Water Right:** _____ ☐ See attachment
   (last, first, middle initial)

   **Co-owner or Other
   Interested Owner:** _____
   (last, first, middle initial)

   Address _____

   City, State, Zip Code _____

   Home Phone No. (____) _____ Business Phone No. (____) _____

2. **Purpose (use):** _____
   a. If irrigation, method of irrigation use   ☐ Sprinkler   ☐ Flood   ☐ Water spreading
   
   ☐ Subirrigation   ☐ Natural Overflow

   b.   If domestic, number of households served: _____

   c.   If stock, total number and type of livestock served: _____

3. **Source of Water:** _____   **Tributary of** _____

4. **Point of Diversion:** County - _____ ☐ See attachment
   ____ Lot ___ Block ____ ¼ ____ ¼ ____ ¼ Section ____ T ____ R _____
   ____ Lot ___ Block ____ ¼ ____ ¼ ____ ¼ Section ____ T ____ R _____
   ____ Lot ___ Block ____ ¼ ____ ¼ ____ ¼ Section ____ T ____ R _____
   ____ Lot ___ Block ____ ¼ ____ ¼ ____ ¼ Section ____ T ____ R _____
   ____ Lot ___ Block ____ ¼ ____ ¼ ____ ¼ Section ____ T ____ R _____
   ____ Lot ___ Block ____ ¼ ____ ¼ ____ ¼ Section ____ T ____ R _____
   Subdivision: _____

   ☐ Replaces claimed information   ☐ Supplements claimed information   ☐ Addendum included
   *Please attach a map showing all points of diversion for this water right.*

5. **Means of Diversion:**   ☐ Well        ☐ Instream Use        ☐ Dam
                             ☐ Headgate    ☐ Pump: Capacity -    gpm
                             ☐ Other - _____

6. **Means of Conveyance:**   ☐ Ditch    ☐ Pipeline                ☐ Instream Use
                              ☐ Other - _____

# **EXHIBIT C** continued**

## AMENDMENT

**7. Place of Use:** County - _____ ☐ See attachment

___acres ___Lot ___Block ____¼ ____¼ ____¼ Section ____ T ____ R ____
___acres ___Lot ___Block ____¼ ____¼ ____¼ Section ____ T ____ R ____
___acres ___Lot ___Block ____¼ ____¼ ____¼ Section ____ T ____ R ____
___acres ___Lot ___Block ____¼ ____¼ ____¼ Section ____ T ____ R ____
___acres ___Lot ___Block ____¼ ____¼ ____¼ Section ____ T ____ R ____
_____Total Acres.   Subdivision - _____

☐ Replaces claimed information ☐ Supplements claimed information ☐ Addendum included

*Please attach map showing entire place of use for this water right*

**8. Flow Rate Claimed:** _____
☐ cubic feet per second
☐ gallons per minute
☐ miner's inches

**9. Volume Claimed:** _____ acre-feet per year

**10. Period(s) of Use:** _____
*(Month/Day TO Month/Day)*

**11. Priority Date:** *(date of first use)* - _____
*(Hour   Month/Day/Year)*

**12. Type of Historical Right:**
☐ Decreed Right
☐ Filed Appropriation Right
☐ Use Right

> Please attach proof of priority date or type of right.

**13. Reasons for Amendment:** _____

**14. Comments:** _____

**15. Notarized Statement Signed by Owner:** ☐ See attachment
I, having been duly sworn, depose and say that I, being of legal age and being the owner of this claim of existing water right know the contents of this amendment and that the matters and things stated there are true and correct. (*All current owners of the right as listed in the DNRC centralized record system are required to sign.*)

_____          _____
Signature                                                              Date

_____          _____
Signature                                                              Date

STATE OF MONTANA
County of _____
Subscribed and sworn before me this _____ day of _____, _____

_____

*(notary seal)*          Residing at _____

My commission expires _____

# **EXHIBIT D**

## REQUEST TO WITHDRAW STATEMENT OF CLAIM

I /We, _____ hereby request the

withdrawal of my/our Statement of Claim number _____.

The reason for this request is:

_____ I /We have an existing right which is exempt from filing.

_____ This claim is for a use of water after July 1, 1973.

_____ I /We have no existing water right to claim.

_____ Other:

_____

_____

_____


| | |
|---|---|
| Signature | Date |

| | |
|---|---|
| Signature | Date |


STATE OF MONTANA

County of _____

Subscribed and sworn before me this _____ day of _____, 20_____.

_____
Notary Public for the State of Montana

Notary Seal      Residing at_____

My commission expires _____

*Exhibit B*

# WATER RIGHT ADJUDICATION RULES
# AMENDED BY THE MONTANA SUPREME COURT

EFFECTIVE
DECEMBER 5, 2006

TABLE OF RULES

Rule

1.  Purpose of rules and summary of adjudication process
    (a)   Authority of Montana water court
    (b)   The adjudication process
2.  Water court practice and procedures
    (a)   Citation
    (b)   Application of other rules
    (c)   Water Court
3.  Issuing a decree
4.  Preliminary, temporary preliminary, other interlocutory decree
5.  Procedure for filing objection to preliminary or temporary preliminary decrees
    (a)   Notice of objection
    (b)   Service of objection
    (c)   Filing of objection
    (d)   Extension of objection period
6.  Notice of the filing of an objection an opportunity to file counterobjection
    (a)   Notice
    (b)   Counterobjection
    (c)   Service and filing
7.  Issue remarks
8.  Claims called in on motion of the water court
9.  Notice that objections and counterobjections have been filed and opportunity to file notice of intent to appear
    (a)   Objection list
    (b)   Notice of intent to appear
10. Motions to Amend

11. Masters
    (a)    Appointment
    (b)    Order of reference
    (c)    Powers and duties
12. Department assistance
    (a)    Direction
    (b)    Requests for assistance
    (c)    Field investigations
13. Department data
    (a)    Admissibility
    (b)    Limitations
14. Continuances
15. Discovery
16. Settlement conferences and mediation
17. Settlements
    (a)    Approval required
    (b)    Expansion of claim
    (c)    Reduction of claim
18. Pretrial conference
19. Burden of proof
20. No right to jury trial
21. Hearings
    (a)    Subpoenas
    (b)    Recordings
    (c)    Procedure in evidentiary hearings involving only the claimant
    (d)    Procedure in evidentiary hearings involving the claimants and other parties
    (e)    Modification of abstract
    (f)    Enforcement
22. Sanctions
23. Master's Report
24. Final decrees
    (a)    Issuance
    (b)    Notice of entry
    (c)    Inspection of final decree
25. Appeals
26. Split claims

27. Public notice of adjudication proceedings
28. Perpetuation of testimony
29. Miscellaneous fees
30. Late claim administrative costs and expenses
31. Water court decree enforcement
    (a)    Preliminary procedure
    (b)    Identification of diversions and instream uses
    (c)    Public meetings
    (d)    Tabulations
    (e)    Controversies
32. Assistance to district courts

## RULE 1.  PURPOSE OF RULES AND SUMMARY OF ADJUDICATION PROCESS

**Rule 1(a).  Authority of Montana water court.**  The Montana water court has a statutory obligation and the exclusive authority to adjudicate claims of existing water rights.  The Montana supreme court establishes these special Montana water court rules of practice and procedure to guide the adjudication of pre-July 1, 1973 water rights.

**Rule 1(b).   The adjudication process.**  Briefly, the adjudication process consists of the following steps:

(1)  upon order of the Montana supreme court, the filing of statements of claim for uses of water that existed prior to July 1, 1973;

(2)  a review of the submitted claim and accompanying materials for clarity and completeness with editing to allow entry into computerized storage;

(3)  the compiling of the claim information into a centralized record system by the Department of Natural Resources and Conservation (hereinafter referred to as the department);

(4)  under the direction of the water court pursuant to §
85-2-243, MCA, the department's examination of claims and the
reporting of facts, data, and issues pertaining to the claims as set
forth in these rules;

(5)  the issuance, by the water court, of interlocutory,
temporary preliminary, or preliminary decrees based upon the
information on the sworn claims, data submitted by the
department, additional information obtained by the water judge,
and, where appropriate, the contents of approved compacts or the
filings for Indian and federal reserved water rights;

(6)  the notice and opportunity for interested persons to
review and object to the interlocutory, temporary preliminary, or
preliminary decrees for good cause;

(7)  judicial hearing by the water court on issues raised in
these proceedings;

(8)  the issuance, by the water court, of final decrees based
upon the previous decrees and the judicial determinations made
upon hearings; and,

(9)  the opportunity for interested parties to review and
appeal the final decrees under § 85-2-235, MCA.


## RULE 2.  WATER COURT PRACTICE AND PROCEDURES

**Rule 2(a).  Citation.**  These rules shall be known as the Water
Right Adjudication Rules and may be cited as Rule __, W.R.Adj.R.

**Rule 2(b).  Application of other rules.**  Unless the context of
these Rules requires otherwise, the Montana Rules of Civil
Procedure (M.R.Civ.P.), the Montana Rules of Evidence (M.R.Evid.),
and the Montana Uniform District Court Rules govern the practice
of the water courts. Unless the context requires otherwise, the
definitions in Rule 2, W.R.C.E.R. apply to these Rules.

**Rule 2(c).  Water court.**  The term "water court" in these practice and procedure rules includes water judges and water masters.

**RULE 3.  ISSUING A DECREE.**  The chief water judge shall issue an order of reference assigning a basin to a water master. The water master shall review the department's summary report. The water master shall advise the chief water judge in writing when the decree is ready for issuance. If the chief water judge is not satisfied with the decree, the chief water judge may make the necessary modifications and issue the decree.  If the water court modifies a claim abstract during the summary report review, it must state its reasons in writing and the department shall place that documentation in the claim file.  Upon determination that the decree is ready for issuance, the chief water judge will issue an order for the department to proceed with printing all of the abstracts of existing water rights to be included in the decree.  The order shall identify the type of decree to be issued.

**RULE 4.  PRELIMINARY, TEMPORARY PRELIMINARY, OR OTHER INTERLOCUTORY DECREE.**  "Preliminary decree," as used in these rules, means a preliminary decree issued in accordance with § 85-2-231, MCA.  Any other decree of a water court, not a final decree under § 85-2-234, MCA, shall be considered a temporary preliminary decree or interlocutory decree.

**RULE 5.  PROCEDURE FOR FILING OBJECTION TO PRELIMINARY OR TEMPORARY PRELIMINARY DECREES.**

**Rule 5(a).  Notice of objection.**  The water judge shall provide notice of the objection period in accordance with § 85-2-232, MCA. Notices of objection must be filed in compliance with § 85-2-233, MCA.  The water court shall provide objection forms.  The objector shall include a statement of:

(1)  the findings and conclusions with which the objector disagrees;‑

(2)   the elements or part of the claim abstract which the objector believes should be modified; and

(3)   the grounds and evidence on which the objection is based.

**Rule 5(b).   Service of objection.**  The objector must mail a completed copy of the objection to each claimant and complete the certificate of mailing on the objection form before filing the original objection with the water court.  If the objector is the sole claimant on the claim, no certificate of mailing is necessary.

**Rule 5(c).   Filing of objection.**  Objections must be filed within 180 days after entry of the decree.  The water judge may, for good cause shown, extend this time limit up to two additional 90-day periods if application for an extension is made prior to the expiration of the original 180-day period or any extension of it. Section 85-2-233(2), MCA.

**Rule 5(d).   Extension of objection period.**  Applications for extensions may be made on forms supplied by the water court.  An extension for one objector in a basin is an extension for all other objectors. Any order of extension shall state the specific calendar date on which the period of extension ends.

**RULE 6.   NOTICE OF THE FILING OF AN OBJECTION AND OPPORTUNITY TO FILE COUNTEROBJECTION.**

**Rule 6(a).   Notice.**  Pursuant to § 85-2-233, MCA, the water court shall notify each person whose claim received an objection that an objection was filed.  The notice shall set forth the name of each objector and shall allow an additional 60 days for the person whose claim received an objection to file a counterobjection to any claim of the objector in the decree.  Counterobjections are limited to those claims included within the specific decree issued by the water court.

**Rule 6(b).   Counterobjection.**  Counterobjections must be filed in compliance with § 85-2-233, MCA.  The water court shall provide

counterobjection forms.  The counterobjector shall include a statement of:

(a)  the elements or part of the claim abstract which the counterobjector believes should be modified; and

(b)  the grounds and evidence on which the counterobjection is based.

**Rule 6(c).  Service and filing.**  The counterobjector must mail a copy of the completed counterobjection to the claimants of the claim to which the counterobjection is filed and complete the certificate of mailing on the counterobjection form before filing the original counterobjection with the water court.

**RULE 7.  ISSUE REMARKS.**  If not otherwise resolved by the objection process, the water court shall review, resolve, and remove all issue remarks appearing on the abstracts of any claim as directed by §§ 85-2-247 through 85-2-250, MCA.

**RULE 8.  CLAIMS CALLED IN ON MOTION OF THE WATER COURT.**  The water court may issue such orders on its own motion as may be reasonably required to allow it to determine whether a claim accurately reflects its claimed pre-July 1, 1973 beneficial use.  The order calling any claim in on motion shall state the basis of the water court's decision to review the claim and shall identify the elements of the claim and the issues to be reviewed.  In reviewing claims called in on its own motion, the water court shall generally follow the procedures set forth in § 85-2-248, MCA.

**RULE 9.  NOTICE THAT OBJECTIONS AND COUNTEROBJECTIONS HAVE BEEN FILED AND OPPORTUNITY TO FILE NOTICE OF INTENT TO APPEAR.**

**Rule 9(a).  Objection list.**  After expiration of the time for filing counterobjections, the water court shall compile an objection list which identifies all claims to which objections or counterobjections were filed, all issue remarks reported by the department, and any claim which the court knows at the time of the compilation of the

list will be called in on the court's own motion.  The water court shall notify in writing each party named in the water court decree or the successor in interest as documented in the department's centralized record system that the objection list has been compiled, where the objection list can be reviewed, and from where copies of the objection list, objections, counterobjections, and issue remarks may be obtained.  The written notice shall set a date on or before which persons other than the claimants, objectors, or counterobjectors to a particular claim shall file a notice of intent to appear with the water court.  The water court shall notify the Montana Attorney General, and may also notify other interested parties identified in § 85-2-232, MCA, and other water users that the objection list has been prepared.  The clerk or person designated by the water judge to mail the written notice shall make a general certificate of mailing certifying that a copy of the notice has been placed in the U.S. Mail, postage prepaid, addressed to each party required to be served the notice.  The certificate shall be conclusive evidence of due legal notice that objections and counterobjections have been filed.  The notice may also be published once in at least one newspaper of general circulation in the area where the basin, subbasin, or drainage is located.

**Rule 9(b).  Notice of intent to appear.**  Any person other than the claimant or objector who intends to appear and participate in further proceedings for any claims or issues included on the objection list must file a notice of intent to appear in compliance with § 85-2-233, MCA.  The water court shall provide notice of intent to appear forms.  The person filing a notice of intent to appear shall specify the claim number and include a statement of the appearing person's legal rights that might be affected by the resolution of the objections or issues involving the specified claim, and the purposes for which further participation is sought.  Persons who file notices of intent to appear as provided in this rule shall receive notice of all future proceedings involving the claims specified in their notice and are entitled to participate in the resolution of the issues associated with those claims.

**RULE 10.  MOTIONS TO AMEND.**  Pursuant to § 85-2-233(6),

MCA, claimants may file motions to amend their own claims and objectors may file motions to amend their own objections. A motion to amend must specify the requested amendment and the grounds for such amendment. Upon review, the water court will determine the notice required pursuant to § 85-2-233(6), MCA, and issue an appropriate order.

**RULE 11. MASTERS.**

**Rule 11(a). Appointment.** Water judges may appoint one or more water masters for the water court or for a particular water division, basin, subbasin, or case.

**Rule 11(b). Order of reference.** The order of reference to a master may specify or limit the master's powers or may direct the master to report only upon particular issues or to do or perform particular acts or to receive or report evidence only, and may fix the time or place for beginning or closing the hearings before the filing of the master's report. Subject to the specifications or limitations stated in the order, the master has and shall exercise the power to regulate all proceedings in every hearing before the master and to take all measures necessary and proper for the efficient performance of the master's duties specified under the order.

**Rule 11(c). Powers and duties.** The water master has the general powers and duties granted a master by Rule 53(c), (d), and (e), M.R.Civ.P.

**RULE 12. DEPARTMENT ASSISTANCE.**

**Rule 12(a). Direction.** The water court may at any time direct the department to provide such information and assistance as may be required by the water court to adjudicate claims of existing rights, as provided in § 85-2-243, MCA.

**Rule 12(b). Requests for assistance.**
(1) All water court requests for department assistance issued after the expiration of the notice of intent to appear filing period and directed at the adjudication of a specific claim or claims

contained in the decree shall be made in writing, delivered to the department, and served upon all parties in the water court proceeding that are identified on the water court service list involving the claim or claims which are the subject of the request for assistance.  The request for assistance shall:

(i)  state the basis for the request for assistance.  If the request for assistance has been initiated at the request of the department, the water court's written request for assistance shall identify the information conveyed to the water court by the department and the department employee who conveyed the information to the water court;

(ii)  specify the elements of each water right claim or claims to be reviewed by the department;

(iii)  if known, identify the department employee who will conduct the review;

(iv)  notify all persons on the water court service list of their right to submit written information to the department concerning the elements of the water right claim or claims being reviewed by the department and shall require all persons who submit information to mail a complete copy to all persons on the water court service list;

(v)  specify a time period for completion of the department's review and the submission of the department's memorandum; and

(vi)  direct the department to file the original memorandum with the water court and mail a complete copy of the memorandum to all persons on the water court service list.

(2)  The department must document all contact with the claimant or any other person regarding the water right claim as provided in Rules 43 and 44 W.R.C.E.R.  All persons on the water court service list are entitled to notice and reasonable opportunity

to be present during any field investigation conducted in conjunction with the request for assistance.

(3)  If necessary during the course of the review, the department may communicate in writing with the presiding water judge or water master to discuss the substance of the review being conducted by the department.  All such communication and court response must be in writing with full service upon all persons on the water court service list.

**Rule 12 (c).  Field investigations.**  Upon written order of the water court, the department shall conduct field investigations of claims.  Unless otherwise directed by the water court, a field investigation shall be conducted with the claimant or a claimant's representative in attendance. The other persons on the water court service list may attend for the purpose of observing the department's field investigation.

(1)  The water court's written order for field investigation shall:

(i)  state the basis for the order;

(ii)  specify the elements of each water right claim or claims to be field investigated by the department;

(iii)  if known, identify the department employee who will conduct the field investigation;

(iv)  specify a time period for completion of the field investigation and the submission of the department's field investigation report; and

(v)  direct the department to file the original field investigation report with the water court and mail a complete copy of the report to all persons on the water court service list.

(2)  When the water court orders a field investigation, the

department shall contact the claimant or the claimant's representative to establish the date and time of the field investigation and, when necessary, to arrange access. The date and time for the field investigation shall be confirmed through a letter from the department to the claimant with a copy sent to the water court, the person who has arranged access, and all other persons on the water court service list.

(3)  The department shall send its confirmation letter at least 20 days before the intended date of the field investigation. The 20-day notice period may be shortened by order of the water court, or waived by written agreement of all persons on the water court service list.

(4)  The field investigation data will be documented in accord with Rules 43 and 44 W.R.C.E.R. The department shall file the original field investigation report with the water court and mail a complete copy of the report, including a certificate of mailing, to all persons on the water court service list.

(5)  If necessary, the department may communicate in writing with the presiding water judge or water master to discuss the substance of the field investigation. All such written communication must be served upon all persons on the water court service list.

(6)  The water court may set a deadline for parties to comment on the department's final memoranda for requests for assistance or on the department's field investigation reports.

(7)  This Rule does not limit the authority of the water court to issue appropriate orders under the provisions of Rule 34, M.R.Civ.P., or Rule 614, M.R.Evid.

## RULE 13.  DEPARTMENT DATA.

**Rule 13(a).  Admissibility.**  In any proceedings before the water court, any investigative reports, data, or other written information produced or promulgated by the department during

examination or under the direction of the water court pursuant to § 85-2-243, MCA, shall be admissible without further foundation and not subject to the hearsay objection in situations where the department is not itself a party.  Due provisions shall be made by the water court to allow any party to cross-examine the department employee who provided the assistance under § 85-2-243, MCA, and to controvert the report, data, or other information by other evidence.

**Rule 13(b).  Limitations.**  If the department fails to comply with the protocols specified in Rule 12, W.R.Adj.R., the water court, upon appropriate motion by any party, may issue an order prohibiting or limiting the department employee's testimony at a hearing on the water right claim, and may strike all or portions of the memorandum prepared in response to the request for assistance or a field investigation report prepared by the department.

**RULE 14.  CONTINUANCES.**  Requests for continuance of any hearing or proceedings in the water court must be made in accordance with the Uniform District Court Rules, and served upon all interested parties not less than 5 days before the date set for hearing or proceedings.  The water court will grant the continuance upon a substantial showing of good cause.  The water court may grant an untimely request for a continuance upon a showing of exigent circumstances.

**RULE 15.  DISCOVERY.**  Parties may obtain discovery as provided by the Montana Rules of Civil Procedure.  The water court, upon motion of a party or on its own initiative, may enter an order controlling or directing the course of discovery.

**RULE 16.  SETTLEMENT CONFERENCES AND MEDIATION.** The water court may require parties to participate in settlement conferences or may assign the matter to a mediator.  In the event the water court assigns an outside mediator, the parties shall share and pay the expense of hiring the mediator as directed by the water court.

**RULE 17.  SETTLEMENTS.**

**Rule 17(a).  Approval required.**  The water court is not bound by settlement agreements.  Any settlement reached by the parties is subject to review and approval by the water court.  Settlement includes the documents filed by a claimant in cases where the claimant is the only party.

**Rule 17(b).  Expansion of claim.**  If a settlement seeks to enlarge or expand an element of a claim and the documentation provided by the parties does not include sufficient evidence to meet the burden of proof, the water court shall provide notice to the settling parties of the deficient documentation and allow reasonable time for the parties to file additional supporting evidence.  If sufficient evidence to meet the burden of proof is not presented within the time allowed, the water court shall not enlarge or expand the element of the claim.

**Rule 17(c).  Reduction of claim.**  The claimant of a water right claim may waive the advantage of § 85-2-227, MCA.  If a claimant agrees to reduce or limit an element of a claim, the water court does not need to determine whether the burden of proof has been met.  The water court may accept a claimant's requested reduction or limitation without further presentation of evidence, unless there is an unresolved issue remark on the claim, in which case § 85-2-248, MCA, must be applied.

**RULE 18.  PRETRIAL CONFERENCE.**  Pretrial conferences shall be conducted in accordance with and governed by Rule 16, M.R.Civ.P., and Uniform District Court Rule 5, insofar as the same is applicable to procedures in the water courts.  Final pretrial conferences shall be the rule rather than the exception.  The water court may order such preliminary pretrial conferences as may serve to expedite formulation of issues of law or fact or the course of the litigation.

**RULE 19.  BURDEN OF PROOF.**  A properly filed Statement of Claim for Existing Water Right is prima facie proof of its content pursuant to § 85-2-227, MCA.  This prima facie proof may be

contradicted and overcome by other evidence that proves, by a preponderance of the evidence, that the elements of the claim do not accurately reflect the beneficial use of the water right as it existed prior to July 1, 1973.  This is the burden of proof for every assertion that a claim is incorrect including for claimants objecting to their own claims.

**RULE 20.  NO RIGHT TO JURY TRIAL.**  Right to trial by jury does not exist in this adjudication of existing water rights.

**RULE 21.  HEARINGS.**

**Rule 21(a).  Subpoenas.**  The parties may procure the attendance of witnesses before the water court by the issuance and service of subpoenas as provided in Rule 45, M.R.Civ.P.  Failure by any person, without adequate excuse, to obey a subpoena served upon that person may subject that person to the consequences, penalties, and remedies provided in Rules 37 and 45, M.R.Civ.P.

**Rule 21(b).  Recordings.**  All hearings held before the water court may be recorded by audio tape, audio-visual, stenographic, electronic, or other appropriate means.  If a hearing was held before a water master, the water master shall file a transcript or recording of the proceedings and of the evidence and the original exhibits.

**RULE 21(c).  Procedure in evidentiary hearings involving only the claimant.**  In an evidentiary hearing involving only the claimant, the order of procedure shall be:

(1)  introductory and explanatory remarks by the water court;

(2)  discussion of the format of the proceeding;

(3)  testimony of the department and introduction of any report, data, or other written information prepared by the department;

(4)  cross-examination of the department by the claimant;

(5) opening statement of the claimant;

(6) introduction of evidence and testimony by the claimant and the claimant's witnesses;

(7) closing statement of the claimant; and

(8) optional briefing schedule for the claimant.

**Rule 21(d). Procedure in evidentiary hearing involving the claimants and other parties.** In an evidentiary hearing involving the claimant and other parties, the order of procedure shall be formulated during the final prehearing conference as required by Rule 16(d), M.R.Civ.P., and included in the final prehearing order.

**Rule 21(e). Modification of abstract.** Following the conclusion of the evidentiary hearing and the expiration of any post-hearing briefing schedule, the water court shall review the evidence in the record, render its written decision in accordance with the burden of proof set forth in Rule19, W.R.Adj.R., and modify the abstract of each applicable claim in accordance with the written decision.

**Rule 21(f). Enforcement.** Until a water judge adopts or modifies a master's report, any claim modified by the master's report may not be enforced under Rule 31, W.R.Adj.R.

**RULE 22. SANCTIONS.** If a claimant, objector, or intervenor fails to appear at a scheduled conference or hearing, or fails to comply with an order issued by the water court, the water court, upon motion, or its own initiative, may issue such orders of sanction with regard thereto as are just. Sanctions applied against claimants may include termination of the claim; or modification of the claim to conform with data provided by the department, information obtained by the court, or information included in an objection. Sanctions applied against objectors and intervenors may include dismissal of the objector or intervenor from the proceeding.

**RULE 23.  MASTER'S REPORT.**  As stated in Rule 53(e), M.R.Civ.P., the master shall prepare a report upon the matters submitted to the master by the order of reference.  If required to make findings of fact and conclusions of law, the master shall set them forth in the report.  The master shall file the report with the clerk of the water court unless otherwise directed by the order of reference. The clerk of the water court shall serve notice of the filing and a copy of the report on all parties who appeared before the master and who were not previously dismissed from the proceeding.  At the discretion of the water court, notice of the filing and a copy of the master's report may also be given to other claimants or other persons not otherwise appearing before the master in that proceeding.

Subject to Rule 6, M.R.Civ.P., any party to the proceeding before the master may file written objections with the water court within 10 days after the service date of the notice of filing of the master's report.  In more complex cases, the water master may enlarge the objection period to 30 days.  Upon request, a 10-day extension to the objection period may be freely granted.  Any party filing objections shall also serve a copy of the objections upon the other parties on the service list.  A hearing will not be held on the objections unless requested by a party or deemed necessary by the water judge.  The water judge shall accept the master's findings of fact unless they are clearly erroneous.  After reviewing the report, the water judge may adopt, modify, or reject the report, in whole or in part, or may receive further evidence or recommit it with instructions.

**RULE 24.  FINAL DECREES.**

**Rule 24(a).  Issuance.**  A final decree shall be issued for a basin, subbasin, or drainage after all objections, counterobjections, and issue remarks have been resolved; all motions to amend and on motion proceedings have been completed; and the requirements of § 85-2-237(1), MCA, within the water division have been satisfied.

**Rule 24(b).  Notice of entry.**  Notice of entry of a final decree shall be sent to all parties named in the decree whose rights are

stated, determined or affected thereby. The notice of entry of the final decree shall also be published once in a newspaper of general circulation in the area where the basin, subbasin, or drainage set forth in the decree is located.

**Rule 24(c). Inspection of final decree.** The notice of entry of final decree shall be in writing, and shall state where in the water division and for what period of time a copy of the final decree may be examined by the parties or interested persons. Any person may obtain a copy of the final decree upon payment of a fee covering the cost of printing or electronic copying.

**RULE 25. APPEALS.** Appeals to the Montana supreme court by those parties entitled to an appeal under § 85-2-235, MCA, shall be taken in the manner specified in Rule 72, M.R.Civ.P., and made within the time frames permitted in Rule 5, M.R.App.P. The notice of appeal shall be in the form prescribed by Rule 4(c), M.R.App.P. The notice of appeal must also include a specific listing of all water right numbers for which the appeal is taken. Within 30 days of the filing of the notice of appeal, the water court may revise the caption of the proceeding to reflect the current status and posture of the parties, file a copy with the clerk of supreme court, and serve a copy on the parties.

**RULE 26. SPLIT CLAIMS.** The water court may split claims into separate claims at any time prior to the final decree upon request of the claimants, or on its own initiative. The remarks in Rule 38(b), W.R.C.E.R. or similar remarks may be added.

**RULE 27. PUBLIC NOTICE OF ADJUDICATION PROCEEDINGS.** The water court may provide notice of adjudication proceedings to the public through direct mail, newspaper advertising, public meetings, radio and television, the internet, or by other means.

**RULE 28. PERPETUATION OF TESTIMONY.** A person who desires to perpetuate testimony regarding the historical beneficial use of any water right claim filed in accordance with § 85-2-221, MCA, may file a verified petition with the water court. The

procedure set forth in Rule 27, M.R.Civ.P., shall be followed, but each reference in that rule to the district court shall refer to the water court and notice to expected adverse parties shall be served by mail to the most recently updated address documented in the department's centralized record system.  If the completed deposition is filed with the water court, it may be placed in the claim file of the claim involved in the deposition.  If more than one claim is involved, the deposition will be placed in the lowest numbered claim file of the claims involved and a notice of that filing location shall be inserted in the other claim files involved in the deposition.  Alternatively, the depositions may be placed in the case file containing the verified petition and a notice of filing location shall be placed in the file of the claims identified in the deposition.

**RULE 29.  MISCELLANEOUS FEES.**  The chief water judge shall periodically establish a schedule of fees for copies of filed and microfiche documents and for fax and other electronic transmissions that do not exceed the highest fee charged for similar services by the state law library, clerks of court, or the department.

**RULE 30.  LATE CLAIM ADMINISTRATIVE COSTS AND EXPENSES.**  On or before July 1 of each odd numbered year, the chief water judge shall establish a schedule of administrative costs and expenses to assess against late claimants as required by § 85-2-225, MCA.  The assessment shall be determined by calculating the number of hours a water judge or master works on a late claim and multiplying that number against a uniform hourly rate.  The uniform hourly rate shall be derived by dividing the water court's annual budget by 2080 hours and dividing that quotient by the number of FTEs authorized by the legislature for the water court. If late claims are consolidated and reviewed with non-late claims and the time devoted to the late claim cannot be separately assessed to a late claim, the water court shall prorate the assessment to fairly allocate the costs of working on a late claim. Unless the fees are waived by the water court, the minimum assessment will be $20.00. If the assessment is not paid within 60 days after notice is provided, the water court shall hold a show cause hearing to determine why the late claim or claims should not be terminated for failing to pay the assessment.  If the assessment

is not paid or adequate explanation provided, the claim may be terminated.  Late claim costs and expenses will not be assessed against withdrawn or terminated claims.

**RULE 31.  WATER COURT DECREE ENFORCEMENT.**  Upon written request from a district court, water court decrees may be enforced pursuant to §§ 3-7-212, 85-2-406(3) and (4), and 85-5-101, MCA.

**Rule 31(a).  Preliminary procedure.**  Upon receipt of a district court request for enforcement, the water court shall:

(1)  determine the scope of the enforcement project and project staffing in consultation with the department; and

(2)  assess the status of all proceedings within the proposed enforcement area to confirm that all objections have been resolved and that the decree is ready for enforcement.

**Rule 31(b).  Identification of diversions and instream uses.** If the decree is ready for enforcement, the water court will:
(1)  identify every diversion and instream use within the enforcement area;

(2)  map diversions and instream uses as needed;

(3)  identify ditch names as necessary;

(4)  note any point of diversion discrepancies or other issues that might adversely affect the distribution of water under the water court's tabulation of existing water rights; and

(5)  notify the claimant of these discrepancies or issues. The water court may resolve any discrepancy or issue through the procedures set forth in §§ 85-2-233(6) and 85-2-248, MCA.

**Rule 31(c).  Public meetings.**  The water court may conduct public meetings on any proposed decree enforcement.

**Rule 31(d). Tabulations.** The water court shall provide tabulations of existing water rights within the proposed enforcement area to the district courts.

**Rule 31(e). Controversies.** If a water distribution controversy arises on a source that is included in the enforcement project, a dissatisfied water user may file a complaint with the district court pursuant to § 85-5-301, MCA, and petition the district court to certify the matter to the chief water judge pursuant to § 85-2-406(2)(b), MCA.

**RULE 32. ASSISTANCE TO DISTRICT COURTS.** The water court may assist the district courts in developing water user billing systems, water commissioner training, and any other requirement to facilitate the distribution of water under the water court decree and tabulations.